Hoke v. Commonwealth.

---

CASE 120—ORDINARY—DECEMBER 3, 1881.

# Hoke v. Commonwealth.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. The act "authorizing the Auditor to appoint agents to attend to revenue matters, approved April 29, 1880, is constitutional.
2. The subject of the act is sufficiently expressed in the title.
3. The agent is a mere subordinate, and his term ends with that of the Auditor appointing him.
4. The act does not interfere with the duties of the assessor, but requires that to be done which he has omitted to do, and has no power to do, after the return of his books has been made to the county court.
5. The penalty is retrospective, and cannot be enforced.

Hoke v. Commonwealth.

BYRON BACON AND BIJUR & DAVIE FOR APPELLANT.

1. The Auditor's Agent acts of 1880 are void, because they take from the assessor and the sheriff, two elective constitutional officers, a portion of the powers and emoluments of their offices, and because they devolve those powers upon an appointive officer created by the legislature. (Morehead St., 180-185, vol. 2, 1377; Loughborough's Dig., 514-516; Rev. Stat., 192-198; Gen. Stat., 154-160; Cooley's Const. Lim., 276; Thompson v. Carr, 13 Bush, 215; Auditor v. Holland, 14 Bush, 153; Speed v. Crawford, 3 Met., 211; 26 Miss., 412; 65 N. C., 609; 7 Hill N. Y., 82; 2 Denio, 272; 29 Cal., 449; 34 Ib., 470; 37 N. Y., 428; Gen. Stat., 120 ; sec. 10, art. 6, Constitution.)

2. The second of the two acts (Acts 1879, volume 1, page 205) further illustrates the objectionable character of this legislation. (Robeson v. Huff, 3 Litt., 39 ; 16 Ohio, 519 ; 11 Minn., 321; 4 Otto, 413; Cooley's Const. Lim., 352; Blackwell's Tax Titles, 213-215 ; 5 Otto, 715 ; Robinson v. Swope, 12 Bush, 27 ; Cooley on Taxation, 279, 280.)

3. The subject of the act is not embraced in the title.

ALEX. HUMPHREY AND RUSSELL & HELM FOR APPELLEE.

1. The subject of the act is embraced in the title. (Phillips v. Covington and Cin. Bridge Co., 2 Met., 221 ; Johnson v. Higgins, 3 Ib., 569 ; Collins v. Henderson, 11 Bush, 79 ; McReynolds v. Smallhouse, 8 Bush, 450 ; Smith v. Cochran, 8 Bush, 111 ; 8 Ib., 352.)

2. The act is not repugnant to section 10, article 6, of the constitution. (Speed & Worthington v. Crawford, 3 Met., 209.)

3. It is premature to argue the alleged retrospective feature of the act. (Cooley's Const. Lim., 178 ; Rushing v. Sebree, 12 Bush, 199 ; Ib., 392 ; 2 Duv., 479.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The relator, S. M. Barker, filed this petition in the Jefferson court of common pleas, in the name of the commonwealth, asking a mandamus against W. B. Hoke, as judge of the Jefferson county court, compelling the latter to act on the information given him with reference to the failure of one Keegan to list his property for taxation.

S. M. Barker, at whose instance this proceeding is had, was appointed by the Auditor Auditor's Agent, under an act of the general assembly, approved April 29th, 1880. By virtue of the provisions of that act, the duty is imposed on the agent of filing information against those who have

Hoke v. Commonwealth.

not given in a proper list of their taxable property, so as to enable the county court to require the payment of taxes upon it.

It is alleged in the petition that such an information had been filed in the county court of Jefferson county against Keegan, and the judge of that court had refused to hear the complaint of the commonwealth on the ground that the act was unconstitutional. It is also alleged that it was the duty of the court under the act to assess the property for taxation, if, upon the hearing, it should be made to appear that the owner had failed to list it, or to pay the state the taxes.

There was a demurrer filed to the petition, and also an answer, in which it is alleged that the county court refused to hear the case because he deemed the information insufficient. This answer, unexplained, might present an obstacle to the proceeding by mandamus to compel action on the part of the county judge; but the opinion delivered by him in that case, or the reason for not proceeding to hear the case, is, that the act being unconstitutional, the court had no power to proceed under it, and such we understand to be the position of counsel in the oral argument of this case. So the question will be treated as if the court had refused to proceed when the commonwealth made out the case upon the ground the act was unconstitutional, and the court had no power over it.

The judge of the circuit court, in awarding the mandamus, did not undertake to direct the county court as to the manner in which the discretion of that court should be exercised, but left all such questions to be considered when the facts of the complaint are made known.

All that is required of the county judge by the mandate;
from the superior court is, that he shall take cognizance of
the case for the purpose of determining whether the inform-
ation is true or false.   The listing of the property by the
county judge and ascertaining its value are essentially min-
isterial acts, and all that the circuit court judge has said is,
that it is the duty of the county court to hear the complaint
when properly made.

The constitutionality of an enactment conferring on the
county court the power to assess the property of delinquents
was expressly decided by this court in the case of Penning-
ton v. Woolfolk, 79 Kentucky Reports.   It was there held
that ministerial and judicial powers were blended in that
tribunal, and to hold otherwise would divest it of a juris-
diction always recognized, and render invalid many of the
statutes giving it a supervisory power in a ministerial char-
acter over county officials.

This power of the county courts over delinquent tax-
payers has existed by reason of legislation since the forma-
tion of the state government, and such jurisdiction, when
properly conferred, has always been recognized, not only as
constitutional, but as vested in a tribunal peculiarly adapted
to the proper determination of all such questions.

The awarding of the mandamus was therefore proper,
unless other constitutional inhibitions have been disregarded
in the enactment of this law.   It is insisted the act is uncon-
stitutional:  1. Because the subject of the act is not expressed
in the title.   2. The agent Barker is not an officer, for the
reason there is no term fixed for the office.   Because it:
confers on the department of Auditor the duties, powers,
and emoluments of the county assessor.

Article 2 of section 37 of the state constitution provides,, that "no law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title." The act under consideration is entitled, "*An act authorizing the Auditor* to appoint agents to attend to revenue *matters.*" It is urged in argument, that in reading the title of this act the mind would be led to the conclusion that it was merely an act to relieve the Auditor from the burden of the revenue department by allowing him to appoint agents or assistants in such counties as he might see proper.

We concur with counsel that such would be the conclusion, but it would suggest, in addition, an inquiry as to the power conferred on the agent, and the business he was authorized to transact with the department in order to relieve the Auditor. The latter, by article 10 of chapter 92, General Statutes, had been clothed with the authority of receiving from banks and other like corporations the amount of taxes due for each year, and of receiving reports from railroad and turnpike road companies, so that their taxes might be paid directly into the treasury; and in the attempt to collect from the delinquent tax-payer, it was manifest that the Auditor could not leave his office for the purpose of visiting each county, so as to file an information against those who had avoided the payment of tax; and to relieve him of this duty, he was empowered to employ agents to discharge such duties, and these agents, when appointed, were at once connected with his department, and subject to his control.

The Auditor is the head of the department, with clerks and agents under him, all of whom are guided by him in the discharge of their respective duties, and the very purpose of the act was to require this agent, the appointee of

the Auditor, to perform certain minor ministerial duties out-side the doors of the office that the Auditor was not expected or required to perform.

The title Auditor's Agent was itself suggestive, to any mind acquainted with the past legislation of the state, as to the duties conferred by the act; and while such a title may not be sufficiently comprehensive to direct an inquiry as to the power conferred, it was certainly suggestive; and when you add to it the words, "*to attend to revenue matters,*" it would certainly induce the legislator to examine its provisions with a view of ascertaining what matters pertaining to the revenue this agent, when appointed, was required to look after.

It is insisted, however, the agent is required to perform the duties that the Auditor (his principal) cannot exercise, and acting independently of the Auditor. The title of the act does not indicate the exercise of a power by the agent that is withheld from the principal. It was certainly not expected that the Auditor could discharge, in person, all the duties pertaining to his office, and necessary to the collection of the tax from the delinquent tax-payer; and therefore the agent had assigned to him certain specified duties that are not required to be performed by his principal.

The act conferring these powers on the agent does not create an independent office, or make the action of the Auditor subordinate to that of the agent. On the contrary, the agent holds his office at the mere will of the Auditor, and is subordinate to the will of the latter in all his actions with reference to the revenue.

The very language of the act, as well as the title, was designed to make the agent subordinate to his principal. He appoints him in the first place, takes from him a bond, and

the result of all his action, whether in the county court or elsewhere, is required to be certified to the Auditor. He can remove him at his will, and the mere fact that the Auditor is not to proceed in person to give the information to the county court, or to recover the money from the taxpayer, if paid without the information, does not create an independent office. The entire supervision of the revenue department, so far as these agents are concerned, is under his control; and conceding the fact that he is not authorized to discharge some of the duties imposed on these agents, and still the title of the act is not misleading.

This court, in the case of Phillips v. the Cincinnati and Covington Bridge Company, reported in 2 Metcalfe, in discussing the object and effect of the constitutional provision in question, said: "It should not be so construed as to restrict legislation to such an extent as to render different acts necessary when the whole subject-matter is connected, and may be properly embraced in the same act." And again: "None of the provisions of a statute should be regarded as unconstitutional when they all relate directly or indirectly to the same subject, have a natural connection, and are not foreign to the subject expressed in the title."

In the case of the Louisville and Oldham Turnpike Road Company v. Ballard, 2 Metcalfe, it is said: "A more liberal construction of this clause of the constitution will be not only more consistent with the objects intended to be accomplished by it, but will be found necessary in the practical business of legislation."

This character of construction has been followed in the cases of Johnson v. Higgins, 3 Met.; Smith v. Cochran, 8 Bush; O'Bannon v. Louisville and Lexington Railroad Company, 8 Bush; Jacob's adm'r v. Louisville and Nash-

ville Railroad Company, 10 Bush, and numerous other cases; and when applied to the title of the act before us, we find each provision has a connection with the subject expressed in the title.

The subject is, in fact, *revenue* matters. The Auditor is the chief officer of the revenue, and he is by this act authorized to appoint *agents to attend to the revenue*. The information, the summons, the action of the county court, all have a direct connection with the subject-matter expressed in the title. They all have a natural connection, and no provision to which our attention has been called can be said to be foreign to the title.

The title to an act obviously delusive, or when the body of the bill is foreign to the title, is unconstitutional: as when the title is to amend an act relating exclusively to *attorneys*, and the subject of the act is revenue and taxation, such a title is deceptive and misleading, and was held by this court, in the case of Pennington v. Woolfolk, to be unconstitutional.

We are satisfied the subject of legislation found in this enactment is sufficiently expressed in the title.

As to the second constitutional objection made by counsel, we are of the opinion that the agent is not an officer within the meaning of the constitution, and there was no necessity for limiting his term of office. He occupies the same relation to the Auditor that clerks in his department do. These are all agents with particular duties assigned to each, and are to the Auditor what the deputy of the sheriff or the deputy of the clerk is to his principal—the term of the agent expiring with the term of his principal.

Section 25 of article 3 of the constitution provides: "A Treasurer shall be elected by the qualified voters of the state

.for the term of two years, and an Auditor of Public Ac-
·counts, Register of the Land Office, and Attorney General
for the term of four years.   The duties and responsibilities
·of these officers shall be prescribed by law : *Provided,* That
.inferior state officers, not specially provided for in this consti-
tution, may be appointed or elected, in such manner as shall
be prescribed by law, for a term not exceeding four years.''

Section 10 of article 6 provides: ''The general assembly
:may provide for the election or appointment, for a term not
·exceeding four years, of such other county or district minis-
terial and executive officers as shall, from time to time, be
:necessary and proper.''

Section 6 of article 6 further provides: ''Officers for
·towns and cities shall be elected for such terms, and in
.such manner, and with such qualifications, as may be pre-
scribed by law.''

In the bill of rights, article 13, section 28, is found this
·provision: ''That the general assembly shall not grant any
title of nobility or hereditary distinction, nor create any
office the appointment to which shall be for a longer time
·than for a term of years.''

The leading purpose of calling the convention of 1849
was to abolish the power of appointment to office for life,
and to substitute the elective system with certain and fixed
.terms of office.

In construing these several provisions of the constitution
relating to officers and their terms of office, this court held,
in the case of Speed & Worthington v. Crawford, reported
in 3 Metcalfe, that town and city officers should be elected;
and the power conferred on the chancery court of Louisville
·to appoint certain officers for that city was adjudged to be
:in violation of article 6, section 6, of the constitution requir-

ing all such officers to be elected. The attempt to vest the power of appointment in the chancellor was in plain violation of section 6 of article 6 of the constitution. The court in that case proceed further to say, that the act was unconstitutional, because in violation of the provision of the constitution requiring the legislature to prescribe the terms of other officers than those mentioned in the constitution. Whether, if the power to appoint had been properly exercised, the court would have held the appointment void, was not determined in that case, nor was the question as to the term of the office involved in the issue raised. Still the decision in that particular case does not affect the question here; nor were the officers in that case the mere agents of the chancellor, or authorized to perform any duty connected with the chancery court of Louisville.

In the case of Offutt v. the Commonwealth, reported in 10 Bush, the question was, whether the trustee of the jury fund was a county officer within the meaning of the constitution, and if so, were his sureties liable for his acts after the expiration of four years (the duration of his term), the trustee holding over?

The statute provides that a trustee of the jury fund shall be appointed for each county by the circuit court, and shall hold the office for the term of four years. This court said: "The office is of that class provided by section 10 of article 6 of the constitution, as follows: 'The general assembly may provide for the election or appointment, for a term not exceeding four years, of such other county or district ministerial and executive officers as shall, from time to time, be necessary and proper.'"

These cases are cited to show the limitation placed upon the power of appointment to office by the various provisions

Hoke v. Commonwealth.

of the constitution, and the action of this court in determining the application of these provisions to the particular cases, and in no instance has it been held where the term of the principal has been fixed, it becomes necessary to prescribe the duration of the term of the agent or deputy acting under him.   The expiration of the term of the principal must necessarily end that of the agent, and the mere fact that the agent may be assigned by the act creating him to the discharge of certain duties the principal is not required to discharge, or is not authorized to perform, will not, and does not, make the agent or the deputy such an officer in the meaning of any provision of the constitution as requires that his term of office should be defined.   He is nevertheless the agent of the Auditor, and the term being prescribed for the one, fixes a certain and defined term for the other, subject to the power of removal by the principal as authorized by the act.

It is argued, however, that the terms of office of the various clerks in the Auditor's department have been fixed by law, and that this is a legislative construction of the provisions of the constitution referred to.   The terms of the clerks in the Auditor's office are fixed, and end at the same time the term of the Auditor expires; but this is no argument in favor of the position assumed by counsel in this case.

The legislature doubtless deemed it unwise to place the power with the Auditor of removing all his subordinates at his mere will, and therefore, when the appointment is made, and the position assumed, it is irrevocable on the part of the Auditor, unless for cause.   The clerk to that extent is made

independent of the Auditor, and the patronage of the latter, once bestowed, cannot be withdrawn for any selfish purpose.

While an office may be defined to be a public position or employment, and a deputy in that sense regarded as an officer, it was never contemplated by the framers of the constitution that agents, clerks, and subordinates of the principal officers of the state and counties should have their term of office defined. The term of the Auditor being fixed, his clerks and agents under him, subject to his supervision and control, and to enable him to execute or have executed all the duties of his office, are mere subordinates, whose terms end with the term of the principal.

It is said, however, that the agent is required to execute a bond, and take an oath, &c. So of almost every deputy or agent of a state or county officer; and while their bonds are generally executed to the principal, the fact that the bond in this case is required to be executed to the commonwealth, and approved by the Auditor, can make no difference. The agent in the transaction of his business is not always under the eye of the Auditor, and the legislature for that cause did not deem it just or proper to make the Auditor personally responsible for his acts, but gave to the latter the general supervisory power over him, with the right to displace him at his will and pleasure.

It seems to us the principal inquiry on this branch of the case is, does this agent, when appointed, occupy a subordinate position to and under the Auditor? If so, he is not an officer whose term should be fixed, for the reason already indicated, and the fact that his peculiar duties are assigned him, and those of the Auditor enlarged by the act authorizing his appointment, does not affect the decision of the question made.

While the officer in this case cannot, in a strict legal sense, be denominated an agent, he is a mere subordinate in a department, holding his office at the will of its chief officer, and it cannot well be adjudged under any reasonable construction of the constitution that the subordinate holds for a longer term than the principal. The construction given the various provisions of the constitution in this case carries out the legislative will, and violates no provision of the organic law.

In the third place, it is maintained the act is void because it confers on the Auditor or his agent the duties, powers, and emoluments of the assessor. It is said the Auditor's agent is required to do that which the assessor should do. It would be more aptly stated in saying that the Auditor or the agent is required to do that which the assessor has omitted to do, and which he has no power by virtue of his office to do. This act in no manner interferes with either the office of assessor or sheriff, or the emoluments belonging to either. The assessor and sheriff are both constitutional officers, with their terms prescribed by the constitution and their duties defined by law.

The assessor, during his term of office, is required to list the property within his county for taxation during each year, and to make a return of his assessor's books at a fixed period during each year to the county clerk. He is also required to return a delinquent list; and after discharging such duties for the current year, his power over the subject-matter for that year ceases. He is without power to re-assess or re-value any property, but this is all left to the county court and the revisory board. Persons omitted to be listed, when reported by the sheriff, may have the property assessed

by the county clerk.   A board of supervisors is also consti-
tuted in each county, with power to correct any error com-
mitted by the assessor, or report to the county court the
names of persons omitted to be listed by him.   (See Gen-
eral Statutes, page 723, title "Revenue and Taxation.")
The power of the assessor is gone with the return of his
books for the current year, and the right to supervise his
action confided to certain county officers designated by the
statute.   The state, in addition to the board of supervisors,
has authorized this agent of the Auditor to give information,
and take other steps in the county court of the county
where the tax-payer resides, to enable the county court to
rectify the errors, and supply the omissions of duty on the
part of the assessor, arising either from neglect on his part,
or from an unwillingness on the part of the tax-payer to dis-
close his taxable estate.   This agent is required to give in-
formation to a tribunal (the county court) that has always,
under legislative authority, exercised this supervisory control,
and in the exercise of this power we perceive no constitu-
tional objection.   It is no appropriation of the emoluments
of the assessor to authorize another to correct his mistakes
committed while in office, nor is his successor in office vested
with any right, by virtue of the office, to supervise this
work.

The sheriff is required to collect the tax when ascertained
by the county court, and it is only in cases where the party
proposes to pay before any steps are taken against him that
the agent is authorized to receive the money, or in cases
where the money is paid after judgment and before execution.
The party is delinquent, and the sheriff has no power or
right to collect the tax, and it is unreasonable to say that in

such cases the money cannot be paid directly to the agent or the Auditor, but must pass through the hands of the sheriff.

While the penalty attempted to be annexed for the failure to list the property, when no such penalty existed at the time of this omission of duty, cannot be enforced, still it does not affect the substantial provisions of the act or present any obstacle in the way of enforcing the collection of the tax. The act was evidently intended to clothe the county court with the authority to ascertain these delinquent tax-payers, and to compel them to contribute their portion of the common burden, and is retrospective in its operation. The penalty, therefore, may be disregarded, in so far as it applies to a failure to list before the penalty was annexed, and when stricken out, if that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, it must be sustained. (Cooley's Constitutional Limitation, page 215.) The right to enforce the penalty can be denied, and the main features of the act enforced. Our attention has not been called to each section of the act in question, or its practical operation, but it is plain that the county court should hear and determine the question made on the information of the relator Barker. This court is not to be understood as deciding that if the relator held an office within the meaning of the constitution at the mere will of the legislature or the Auditor, that his acts would be void or the act unconstitutional. It might well be argued, where the term had not been fixed beyond the constitutional limit, that the provisions of the organic law would supply the defect in the act, and render it operative for the constitutional period. This latter question is waived.

The judgment above is affirmed.    The original action was filed in the common pleas court, and transferred to the Jefferson circuit court, and there decided.