## Central State Hospital, By et al. v. Foley.

(Decided October 20, 1916.)

### Appeal from Whitley Circuit Court.

1. Husband and Wife—Necessaries for Insane, Wife.—By the common law, a husband was liable for necessaries furnished an insane wife, where he had abandoned or failed to provide for her.

2. Husband and Wife—Insanity of Wife—Necessaries.—Under the statutes now in force, where an insane wife is adjudged to be a pauper lunatic and committed to one of the hospitals for the insane, the husband is liable for her board while she is there maintained, if he has sufficient estate to maintain her, in addition to the support of others who are dependent upon him, and he has no defense to an action against him for such board, except a want of sufficient property, as above stated, or the bar of the statute of limitations.

3. Limitation of Actions—Demand for Board of Insane Wife.—The demand of one of the hospitals, in which an insane pauper wife has been maintained, for her board, is barred by the statute of limitations five years after the cause of action has accrued, being a liability created by statute, as provided in section 2515, Kentucky Statutes.

4. Limitation of Actions—Action of Hospital for Board of Insane Wife.—A cause of action, in favor of a hospital for the insane provided for the insane pauper lunatics of the state, against a husband for the board of his insane wife at the hospital, accrues when the husband has estate, which may be subjected to debt,

sufficient for her support, in addition to the support of others who may be dependent upon him.

5. Judgment—Unsigned Judgment—Hospital Cannot Maintain Action for Board Under.—A judgment of a county court, which has never been signed, as provided by section 1060, Kentucky Statutes, does not authorize a hospital for the insane to maintain an action for the board of a patient held under such a record.

6. Husband and Wife—Action for Board of Insane Wife.—In the absence of a valid judgment, which adjudges an individual to be insane and orders his commitment to the hospital for the insane, the hospital can only rely upon a quantum meruit to recover the costs of his board, and in an action against the husband for the board of his insane wife, where she is held in the absence of a valid judgment, which authorizes it, the husband may interpose such defenses as he would have at the common law, in a similar action against him.

7. Judgment—May be Signed by Successor in Office.—A judgment of a county court, which the occupant of the office of judge of that court has left unsigned when his term expired, may be thereafter signed by one of his successors in the office, and thereby rendered valid.

ROSE & POPE, S. S. LAWSON and M. B. O'SULLIVAN for appellant.

H. B. BROWN and SMITH & EARLY for appellee.

Opinion of the Court by Judge Hurt—Reversing.

The action, in which the judgment appealed from was rendered, was brought by the appellant, the Central State Hospital, by the State Board of Control of Charitable Institutions, against the appellee, D. O. Foley, to recover from him the sum of $150.00 per year for the board and maintenance of Mary E. Foley, a pauper lunatic, from the 6th day of August, 1902, until her death, on the 15th day of March, 1912, amounting as alleged to the total sum of $1,445.50. It was substantially alleged in the petition that Mary E. Foley was the wife of appellee, and that on or about the 6th day of August, 1902, she was adjudged to be a dangerous pauper lunatic by a judgment of the Jefferson circuit court and ordered to be committed to and cared for in the Central Kentucky Asylum for the Insane, now the Central State Hospital, and that pursuant to the judgment and order she was committed to the asylum for the insane and there remained, until the date of her death; that she was at all times a lunatic and incapable of contracting or caring for helself, and was furnished with board, lodging and the other neces-

saries of life by the Central Asylum for the Insane and its successor, the Central State Hospital; that the cost of maintaining her there exceeded the sum of $150.00 per annum; that she had no estate of any kind and nothing had been paid or been received by the appellant nor its predecessor for supporting, maintaining and caring for her during the years above mentioned; that the support and maintenance furnished was necessary for her; that appellee has estate, which can be subjected to debt, sufficient to pay the demand sued for, in addition to the support of any others dependent upon him.

The appellee, by answer, denied in general terms that he was indebted to appellant in any sum for the board of his wife; and alleged that previous to May 6, 1902, he was a citizen of and resided in the state of Tennessee; that he had caused his wife to be committed to an asylum for the insane in that state, and thereafter, without his consent, the father of his wife procured her release from that asylum and brought her to the state of Kentucky; that thereafter, the authorities of the state of Kentucky, without his knowledge or consent, committed her to the Central State Hospital; that the board, lodging and care furnished her by the appellant was voluntary and against his will, and without excuse, therefor, and unnecessary. By another paragraph, the appellee invoked the statute of limitations, as provided for such states of case, as a bar, to the recovery sought, of all the sum sued for, which had been expended for his wife previous to the 12th day of February, 1910; that he has at all times, from the time of his wife's commitment until her death, been the owner of real and personal property in the states of Kentucky and Tennessee, which was subject to execution for debt and out of which appellant's demand could have been satisfied. The affirmative averments of the answer were denied by a reply.

Evidence was heard, which proved that Mary E. Foley was confined in an asylum for the insane in Tennessee; that her father and appellee went together to the asylum and secured her release and brought her to the home of her father in Whitley county, Kentucky, where she remained for about two years; that appellee resided about one and a half miles from the home of his wife's father but in the state of Tennessee; that during the two years that she was at her father's home, the appellee visited her four or five times. It does not appear whether he did or provided anything for her maintenance during this

time. She was entirely insane and appellee testified, that he upon one occasion proposed to return her to Tennessee, but that her mother objected and thereafter he gave her no further attention. Thereafter, upon the motion of the county attorney of the county, probably at the instance of her father, she was tried in the Whitley county court and adjudged to be a pauper lunatic and committed to the then Central Asylum for the Insane, now the appellant. While confined there, the appellee visited her as many as three times. He made no objection at any time to her confinement there, and never sought to procure her release. The appellee, at the time his wife was convicted of lunacy in the Whitley county court, was the owner of real estate in Whitley county, Kentucky, of the value of three or four thousand dollars, which he has continuously owned, holding a deed of record therefor. He has since acquired and owns other property in the state of Kentucky, and, also, considerable property in the state of Tennessee. There is no pretense made, that he did not at all times own estate sufficient to have maintained all who were dependent upon him, if any, including his wife.

After the conclusion of the testimony, the appellant offered and moved the court to give three instructions. By the first the jury was instructed to find for appellant, at the rate of $150.00 per year, for the board of Mary E. Foley, from February 12, 1910, until her death. By the second instruction offered, the jury was directed to find for appellant, at the rate of $150.00 per year, for the time it boarded and cared for Mary E. Foley, prior to February 12, 1910, if the jury believed from the evidence that the appellee did not have in this state sufficient property or money out of which the appellant, by the exercise of ordinary diligence, could have collected from appellee the value of the board of his wife, at the rate of $150.00 per year, prior to the date mentioned. The third instruction offered was the converse of the second offered. These instructions were refused, to which appellant excepted.

The appellee moved the court to peremptorily instruct the jury to find a verdict for him. This motion was sustained and the jury instructed to return a verdict for appellee, which it did. To the giving of the instruction to find for appellee, the appellant excepted. A judgment was rendered dismissing the petition. The appellant's motion for a new trial being overruled, it has appealed.

It will be observed that there is no denial in the answer of the averments of the petition, which were to the effect that Mary E. Foley was duly tried and convicted and adjudged to be a pauper lunatic by a judgment of the Jefferson circuit court, and ordered to be committed to the asylum for the insane, and there remain as such. It is conclusively presumed, in the absence of any controversy upon that subject, that the court had jurisdiction of her person and the subject of the action, and that the inquisition was regular and the judgment valid. Under the principles of the common law, a husband is under a legal obligation to support and maintain his wife, and the fact that she is so unfortunate as to be insane does not absolve the husband from that obligation. If he fails to support and maintain her, any one who does furnish her with the necessaries may compel him to pay therefor. 13 R. C. L. 1190; 21 Cyc. 1232-1233; Gaines v. Gaines, 9 B. M. 295. Section 257, Ky. Stat., is as follows:

"Where patients, who have been or may be supported in either of said asylums, have or shall acquire estate, which can be subjected to debt, the Auditor of Public Accounts is authorized and directed in every such case to sue for in the name of the asylum and recover the amount of such patient's board, at the rate of two hundred dollars per year, or so much thereof as such estate will suffice to pay, for the time they shall have been respectively kept and maintained therein, and not otherwise paid for, and by proper proceedings subject their estates, respectively, for the payment thereof; and when the husband, wife or parent of any such patient, who has been or may be supported in either asylum, shall have estate sufficient for the support of such patient, in addition to the support of any others who may be dependent on such husband or parent, in like manner to sue and recover from such husband the amount of his wife's board, and from such parent the amount of his or her child's board at the rate aforesaid for the time they shall have been respectively supported by such asylum, and the statute of limitations providing the time in which such actions for such recovery may be instituted shall not run against recovery herein provided for until from and after the time at which said estate is acquired.

"Such suit shall create a *lis pendens* lien, and if judgment is obtained, such judgment shall constitute a lien upon so much of the patient's estate as is described in the petition." * * *

The statute, *supra,* provided, that when the husband of any patient, who has been or may be supported in one of the asylums for the insane and has no estate, shall have estate sufficient for the support of such patient, in addition to the support of any others who may be dependent upon him, the authorities of the asylum may sue the husband and recover from him the amount of his wife's board for the time, which she shall have been supported by such asylum. The rate fixed in the statute is $200.00 per year, but it was decided in Schroer v. Central Asylum, 113 Ky. 288, that the statute was unconstitutional to the extent that it authorized the collection of more than $150.00 per year. The rate was refixed by the act of March 21, 1908, and the rate per year fixed at $150.00, instead of $200.00. The statute does not provide for any escape by the husband from the payment of his wife's board, where she is a pauper lunatic and has been committed to and maintained in one of the asylums or hospitals provided by the state for the keeping and care and medical treatment of the insane, except upon the humane ground, that he has not estate sufficient for the purpose, in addition to the support of others who are dependent upon him. In fact, the terms of the statute divests the husband of any other defense to the action, except a want of property, or the bar of the statute of limitations. While by the common law a husband could not be made liable for necessaries furnished to his wife, unless he had abandoned her or failed to support her; and if his wife was insane and he cared for and supported her at his home or elsewhere, he could not be made liable for the payment for things, otherwise necessaries, furnished to her by other persons, but under the statute laws now in force, the state exercises a care for and authority over the persons and estates of insane persons. An application for an inquest into the condition of the mind of a person alleged to be insane, must be made by the representative of the state, in the person of the Commonwealth's attorney or the county attorney, Section 2162, Kentucky Statutes, and the court adjudges as to whether or not it is proper to confine a lunatic in one of the hospitals maintained by the state for insane persons. If the court adjudges in accordance with the law, that it is for the benefit of the insane person and society that such person be confined in and treated at one of the hospitals, the objection, which any one may make to the order of the court, does not avail anything. Society has an

interest in the welfare of the insane person, which outweighs the mere desire of a husband or parent as to where the wife or child, who is insane and penniless, shall be kept or treated, and the statute laws have so provided. The evidence, in the instant case, shows that the husband and father of the unfortunate woman took her from the place provided in the state of Tennessee for insane persons and brought her into the state of Kentucky; that she remained for nearly two years at her father's home with the full knowledge of the appellee; that he upon a mere pique abandoned her; the father was unable longer to maintain her; the officials of the county committed her to the asylum as a pauper lunatic. The claim now that the commitment was without his consent does not present any defense to an action against him for the board, which he is obliged to pay both by statute and the common law. Hence, upon the pleadings and evidence, the court should have instructed the jury to find for appellant all of the demand sued for, except such portion as was barred by the statute of limitations.

Section 2515, Kentucky Statutes, provides that the enforcement of a liability created by statute shall be barred after five years from the time the cause of action accrued. This court, in Schroer v. Central Asylum, 113 Ky. 288, *supra,* held that a demand provided for in Section 257, *supra,* was a liability created by statute, and that the five year statute of limitations, as provided for in Section 2515, *supra,* applied to it. In Section 257, *supra,* it is enacted, that the causes of action provided for in that section shall arise when estate is acquired, which may be subjected to the demands. Hence, a husband, under the provisions of that statute, becomes liable for the board of his insane wife at one of the hospitals provided by the state for the insane, when he has acquired a sufficiency of estate to pay the board of his wife, in addition to the support of others, which may be dependent upon him. An action to recover it must be instituted within five years after such estate is acquired. The uncontradicted evidence in the instant case, proves that the appellee had a sufficiency of property to pay the board of his wife, in addition to any dependent upon him, from the time of the commitment of his wife to the asylum and all the time, while she was maintained there, and that the evidence of a sufficiency of his property to make him liable for the board was of record. Hence, all the demand sued for, which was created more than five years

before the filing of the action was barred by the statute of limitations, and the court properly rejected the second and third instructions requested by appellant, and should have peremptorily instructed the jury to find for appellee as to all of the demand which was created five years before the institution of the suit. If, upon another trial, however, the evidence is contradictory as to when the cause of action accrued, and when the statute of limitations began to run, the issue should be submitted to the jury under proper instructions.

The appellee, however, insists that the record of the conviction of Mary E. Foley and the order for her commitment to the Central Asylum for the Insane is only an unsigned judgment upon the records of the Whitley county court. Such a record is not a judgment at all, and conferred no authority upon the asylum to receive or hold the patient. Raymon v. Smith, 1 Met. 65; Com. v. Chambers, 1 J. J. M. 108; Johnson v. Com., 80 Ky. 377; Ewell v. Jackson, 129 Ky. 214; Farris v. Matthews, 149 Ky. 455. The appellee, however, by his answer admitted the validity of the judgment. The county judge now in office may yet, however, sign the judgment and make it valid, 1060 Kentucky Statutes; May v. Duncan, 157 Ky. 586; Anderson's Com. v. Anderson's Admr., 161 Ky. 18; L. R. A. 1915, C. 581.

Without a valid judgment adjudging Mary E. Foley to be a pauper lunatic and ordering her to be committed to the asylum, the appellant can only rely for recovery for her board against appellee as for necessaries furnished to her upon a *quantum meruit,* and in such state of case the appellee could rely for a defense to the action upon such as he would have by the common law. Michaels v. Asylum, etc., 118 Ky. 448; Porter, etc. v. Aysler, etc., 28 R. 796.

The parties should be permitted, if they desire, to amend their pleadings.

For the reasons stated the judgment is reversed and cause remanded for proceedings consistent with this opinion.