# Tincher, Judge of Jefferson County v. Commonwealth, on Relation of W. H. Shanks, Auditor.

(Decided May 8, 1925.)

## Appeal from Franklin Circuit Court.

1. Reformatories—Statutes Requiring County to Pay State Institution for Maintenance of Child Not Unauthorized Diversion of County Funds.—Ky. Stats., sections 2095b-13a, 2095b-29 requiring county to pay cost of conveying child to, and maintenance at, state institution, are not unconstitutional as diverting county funds to discharge of expenses of state institution.

2. Constitutional Law—Statutes Requiring County Judge to Direct County's Payment of Moneys Due Reformatories Held Not Invalid as Vesting in Judge Executive or Legislative Functions.—Ky. Stats., sections 2095b-13a, 2095b-29, fixing charge to be paid by county to state institution for maintenance of children received from county, and making it duty of county judge by written order to direct county treasurer to forward to auditor amounts due, are not invalid as vesting county judge with executive or legislative functions, in violation of Constitution, sections 27, 28.

3. Constitutional Law—County Judge May Not Question Validity of Statute Requiring Him to Direct Payment to State Institution on Ground that Statute as to Others is Invalid.—One whose rights are not affected by operation of statute will not be heard to question its validity, and county judge required, under Ky. Stats., sections 2095b-13a, 2095b-29, to direct county's payment of moneys due state institution for maintenance of children, could not attack validity of such statutes on ground that if they were construed to afford remedy by mandamus against him they were invalid as violation of due process clauses of state and federal Constitutions, because not affording fiscal court or county commission opportunity to be heard in such mandamus suit

4. Mandamus—Mandamus will Lie to Compel County Judge to Direct Payment of Amounts Due State Institution.—Mandamus will lie to compel county judge to direct payment of amounts due state institution, under Ky. Stats., sections 2095b-13a, 2095b-29, for maintenance of children sent by county and the auditor of public accounts, though only authorized by the act to sue the county may bring such suit.

5. Mandamus—Suit for Mandamus to Compel County Judge to Direct Payment of Amounts Due State Institution Held Properly Brought in County Prescribed by Statute.—Under Ky. Stats., sections 2095b-13a, and 2095b-29, vesting in Franklin circuit court jurisdiction of all proceedings necessary for collection of amounts due under such statutes for maintenance of children at state institution, suit for mandamus to compel county judge of Jefferson county to direct payment of such amounts was properly brought in Franklin county.

6. Limitation of Actions—State Institution's Claims Against Counties Held Barred by Limitations.—Claims of state institution against counties, arising under Ky. Stats., sections 2095b-13a, 2095b-29, more than five years previously, held barred by statute of limitations (section 2515), in view of section 2523.

7. Limitation of Actions—County in Action by State May Plead and Rely on Statute of Limitations.—Under Ky. Stats., section 2523, county, in action by state, may plead and rely on statute of limitations (section 2525).

8. Reformatories—County's Liability for Maintenance of Children at State Reformatory Determined.—Under Ky, Stats., section 2095b-13a, providing "when any child over ten years of age and under sixteen" shall be confined in house of reform, county shall pay for maintenance of "such child" stated sum per year, county is liable only for maintenance of child until it attains age of 16 years, though under section 2095b-29 county is liable for maintenance of girls for full period of their detention, regardless of age.

9. Counties.—State may recover from counties interest on overdue payment for maintenance of children in state institution from date of demand and refusal to pay by county.

WM. F. CLARKE, JR., Assistant County Attorney, for appellant.

D. L. HAZELRIGG for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing on the original and on the cross appeal.

In 1914 the legislature passed an act which is now section 2095b-13a of the Kentucky Statutes. It reads:

"When any child over ten years of age and under sixteen years of age shall be sentenced to, and confined in, the house of reform, the expense of conveying said child to the house of reform shall be paid by the county from which sent, and said county shall pay for the maintenance of such child one hundred dollars annually, which sum shall be payable into the state treasury in monthly installments at the end of each month. It shall be the duty of the county judge on the last day of each month, by written order, to direct the treasurer of the county, or the person acting as treasurer, to forward to the auditor of public accounts the amount due under the provisions of the act. If any county shall make default in payment of any sum due under the provisions of this act the auditor may institute suit against such county for the recovery of the amount due in the

Franklin circuit court. The provisions of this section shall not apply when the child so sentenced has been indicted upon a felony charge.''

In 1916 the legislature created a separate house of reform for girls, and provided in that act for their maintenance in such house of reform. The provision for such maintenance is now known as section 2095b-29 of the Kentucky Statutes, and reads:

"When any girl shall be committed to said house of reform, the expenses of conveying her to the institution shall be borne by the county of her residence, and the officer conveying her shall receive only the actual necessary expenses for food, lodging and transporting her; and said county shall thereafter pay for her maintenance the sum of seven dollars per month, which sum shall be payable into the state treasury at the end of each month. It shall be the duty of the county judge of each county on the last day of each month, by written order, to direct the treasurer of the county, or the person acting as treasurer, to forward to the auditor of public accounts the amount due under the provisions of this act. If any county shall make default in payment of any sum due under the provisions of this act, the auditor may institute suit in the name of the Commonwealth against such county for the recovery of the amount due in the Franklin circuit court.''

The auditor of public accounts, appellee herein, brought this action in the Franklin circuit court against the appellant, the present county judge of Jefferson county, to compel him to direct, by written order, the treasurer of Jefferson county to forward to the auditor the amounts due the state under the provisions of these acts on account of children committed to the schools of reform from Jefferson county since 1914. An itemized account of this claim, the correctness of which is conceded, was filed with the petition. The lower court awarded appellee the relief sought with the exception of interest on the account, and from that judgment the county judge prosecutes this appeal, and the auditor a cross-appeal on the question of interest disallowed.

Various defenses are relied upon by the appellant to defeat this action. They may be grouped under four heads: (a) Constitutional objections to the acts in ques-

tion; (b) procedural objections; (c) limitations, and (d) interpretation to be put on the acts. Addressing ourselves to these defenses in the order named, we find that it is first contended that these acts are unconstitutional in that they divert county funds from county purposes to the bearing of the expense of a state institution; they attempt to invest the county judge, primarily a judicial officer, with executive or legislative functions in violation of sections 27 and 28 of our Constitution; and if the acts be construed as permitting a mandamus suit against the county judge, as here attempted, they violate the due process of law clause of the state and federal Constitutions, because they do not afford the fiscal court or county commissioners who have charge of the moneys and fiscal affairs of the county any opportunity to be heard in such mandamus suit on the question of the correctness of the account sued on. Taking up these constitutional contentions seriatim, we find that in the case of Lang v. Commonwealth, 190 Ky. 29, 226 S. W. 379, the act of 1914, to which the act of 1916 is similar in all respects so far as these constitutional questions are concerned, was before this court and its constitutionality was there upheld. Counsel insists, however, that the points here urged against the constitutionality were not considered in the Lang case. Without deviating at all from the rule of *stare decisis,* we will discuss these objections urged, since counsel is of opinion that the Lang case, in so far as it held that the acts did not result in a diversion of county funds for state purposes, has been weakened, if not tacitly overruled, by the two subsequent cases of Commonwealth v. Sparks, 201 Ky. 5, 255 S. W. 859, and Fayette County v. Wells, 195 Ky. 608, 243 S. W. 4. The Sparks case involved the power of the state to require counties to construct and maintain armories for the state militia or national guard, and this court held that they could not be so compelled. However, the Sparks case itself differentiated the Lang case thus:

"In the Lang case the question was whether, under the Constitution and statutes enacted pursuant thereto, a county could be required to contribute the sum of $100.00 per annum towards the maintenance of its inmates of the house of reform for youthful criminals not convicted of a felony, and delinquent children, who were placed therein under judgments of the county juvenile court. In upholding the right of the state by statute to require such con-

tribution in order to that extent reimburse the state for its maintenance of the house of reform, the opinion said: 'There could be no discrimination between the counties, as each would bear a burden in proportion to the benefits it would receive from the correction and training of its citizens.' The implication is that, if there was an absence of direct local benefits, there would be a discrimination between the counties, and the statute would be invalid. But, beyond that, the county, in being forced to comply with the statute there involved, was doing nothing more than contributing toward the reformation and social improvement of its local youths so as to make better citizens of them in the future, and it was thus discharging a permissible local governmental function or county purpose.''

In the Fayette county case the question was whether or not the state tax commission had power itself to make a reassessment of the property in that county after the tax commission had ordered a reassessment and the county authorities had failed or refused to make such reassessment, and the court held that it had no such power. This decision necessarily carried with it the incidental question of the cost of reassessment. Thus it appears that the Lang case is not only clearly distinguishable from the Fayette county case and the Sparks case, but that also it was distinguished in the Sparks case. Hence its authority has not been weakened by these two later decisions, but on the contrary has been strengthened, so that it may now be considered as settled that the acts under consideration do not result in a diversion of county funds to the discharge of the expenses of a state institution, but on the contrary involve a statutory liability imposed upon the counties who desire to afford themselves of their benefit by sending their children to the state reform school, which liability is a local benefit in that the counties are having their youths reformed and made better citizens.

Further, these acts do not unconstitutionally vest the county judge with executive or legislative functions. The county judge is *ex officio* a member of the fiscal court or county commission as the case may be. From the beginning of the history of our state, it has been the practice of the legislature to vest in the county judge, who is really the chairman of the executive and legislative body of the county, duties of the character here im-

posed upon him. In the case of Pennington v. Woolfolk, 79 Ky. 13, this court said:

"But in the light of the unchallenged action of all departments of the government since the adoption of the Constitution of 1792 to the present time, we entertain no doubt that the county court must now be regarded, as respects a number of matters local and exceptional in their nature, as excepted out of this provision of the Constitution.

"Each of the prior Constitutions contained the precise language of our present Constitution quoted *supra*.

"   .   .   .

"That the greater part, if not all, of the powers above referred to as having been conferred upon the county court are nonjudicial in their nature, will not be disputed; but in no instance of which we are aware was the constitutionality of any of these acts assailed, and certainly none of them were ever pronounced by this court to be invalid.

"But we are not left to infer from the enactment and long continued existence of statutes of a merely kindred nature to that now under discussion that it has through the whole legislative and judicial history of the state been regarded as competent to confer upon the county court powers not in their nature judicial, and especially powers relating to the revenue of the state.

"   .   .   .

"Whatever doubt we might otherwise have of the power of the legislature to confer upon the county court powers which are not judicial, must yield to the authority of the long continued practical construction to be found in the statute to which we have referred, and which have been acquiesced in by the bar and all departments of government for more than three-quarters of a century.

"Since some of these statutes were enacted, the Constitution has been twice amended and readopted. The conventions must be presumed to have been well acquainted with the fact that these nonjudicial powers had been conferred by various acts, and were being exercised by the county courts, and the readoption of the first article in the very words of the former Constitutions was a virtual recognition of

the validity of the statutes by which these powers had been, from time to time, conferred.''

To the same effect are Baldwin v. Shine, 84 Ky. 502, 2 S. W. 164, and Hoke v. Commonwealth, 79 Ky. 567. Therefore, the vesting in the county judge of the performance of such executive or ministerial duties as are here involved is not a violation of sections 27 or 28 of our Constitution.

It is lastly urged that if these acts be construed to afford a remedy by mandamus against the county judge, as here attempted, it violates the due process of law clause of the state and federal Constitutions, because the fiscal court or county commission which must pay these claims has no day in court to be heard on the correctness of them. Without deciding whether or not the certification by the county judge to the county treasurer of the amount due under these acts would be conclusive and binding on the county in an action brought by the auditor to collect from the county the amount so certified, it is sufficient to say that, under well settled constitutional principles, no person will be heard to question the validity of a statute whose rights are not affected by its operation. Kentucky Heating Co. v. City of Louisville, 174 Ky. 142, 192 S. W. 4, 12 C. J. 760. As the county judge has his day in court, he cannot complain that some other person may not have such day. This disposes of the constitutional questions raised.

Taking up the procedural objections, we are urged to say that the appellee has no right to proceed against the county judge by a mandamus proceeding, but can only sue the county on the claims involved in this litigation. This point was decided adversely to counsel's contention in the Lang case, *supra,* where the court said:

''A further contention is made, that the auditor has no authority to maintain the present action, as the statute only authorizes him to sue a county, and not a county judge. The statute, however, makes it the duty of the county judge on the last day of each month to make an order directing the treasurer of the county, or one acting as such, to transmit to the auditor the sum due, and, as the duty is imposed upon the auditor of public accounts to receive and account for the sum for the Commonwealth, we think he is authorized to maintain an action in the name of the Commonwealth requiring the orders to

be made which are necessary to enable the state by the auditor to proceed against the county."

Since the county judge presides over the juvenile court, he knows *ex officio* when children are committed to these schools of reform. It is very easy for him to keep himself informed concerning their discharge, and there is nothing for him to do each month but to certify to the county treasurer the claims for children theretofore sent to the houses of reform and not yet discharged—a very simple calculation and certification. This is plainly a ministerial duty, simple to be performed if not allowed to get in arrears, as happened in this case, and hence we believe on principle and under the Lang case the auditor had a right to bring this mandamus suit. He also had a right to bring it in Franklin county, as we believe these acts contemplate the vesting of jurisdiction in the Franklin circuit court of all proceedings necessary for the auditor to collect what may be due the state on these claims. Such by implication was the holding in the Lang case, as that was a mandamus proceeding in the Franklin circuit court.

Passing the constitutional and procedural questions, appellant next relies on the five-year statute of limitations as a bar to so much of these claims as accrued more than five years before the bringing of this action. Section 2515 of the statutes reads:

"An action upon a contract not in writing, signed by the party, express or implied; an action upon a liability created by statute, when no other time is fixed by the statute creating the liability; an action for a penalty of forfeiture when no time is fixed by the statute or law prescribing the same; an action for trespass on real or personal property; an action for the profits of or damages for withholding real or personal property; actions for the taking, detaining, or injuring personal property, including actions for the specific recovery thereof; an action for the injury to the rights of the plaintiff, not arising on contract, and not hereinafter enumerated; an action upon a bill of exchange, check, draft or order, or any indorsement thereof, or upon a promissory note, placed upon the footing of a bill of exchange; an action to enforce the liability of a steamboat or other vessel; an action upon an account concerning the trade of merchandise, between merchant

and merchant or their agents; an action for relief on the ground of fraud or mistake, and an action to enforce the liability of bail, shall be commenced within five years next after the cause of action accrued.''

In this connection, we should also consider section 2523 of the statutes, which reads:

''The limitations prescribed in this chapter shall apply to actions brought by or in the name of the Commonwealth, in the same manner as to actions by private persons, except where a different time is prescribed by some other chapter in this revision.''

It is admitted that no demand was ever made on these claims until shortly before the bringing of this action in 1924. That the liability here sought to be enforced comes literally within section 2515 of the statutes, *supra*, must be admited. Section 2523 provides that limitations may be pleaded in an action brought by the Commonwealth, and we have so held in Richter v. Commonwealth, 180 Ky. 4, 201 S. W. 456; Central State Hospital v. Foley, 171 Ky. 616, 188 S. W. 752, and other cases. True it is that these were contests between the state and private individuals, but we see no good reason to distinguish a county from a private individual in such matters. Though the county is a subdivision of the government, it is quite distinct from the state. Its duties and obligations are, in the main, entirely local. We have seen that the state can not require it to support purely state institutions, such as armories. Sparks case, *supra*. In many instances in our laws it is distinguished and set apart from the state as such. An so, we think, the county, in an action by the state like this, may plead and rely on the statute of limitations.

The case of Board of Trustees of the Male High School v. Auditor, 80 Ky. 336, cited by appellee against this view, is plainly distinguishable. There the controversy was between two departments of the same state government. Here the contest is between a local arm of the government created by the Constitution, and the state government itself. We conclude, therefore, that in so far as any part of the claim here sued on antedates five years prior to the bringing of this suit, the same is barred, and the refusal of the lower court so to adjudge was error.

Concerning the extent of the liability of the county, it must be admitted that under the 1916 act, the county is responsible thereafter, and until their discharge, for the maintenance of all girls sent to the school of reform, for the act says: "When any girl" shall be committed to said school of reform, the county "shall thereafter" pay for her maintenance the sum of $7.00 per week. Under the 1914 act, however, we are of opinion that the county is responsible only for the maintenance of children sent to the school of reform under its provisions, until they are 16 years of age. This act says that "When any child over 10 years of age and under 16 years of age shall be sentenced to and confined in" the school, the county shall pay "for the maintenance of such child" $100.00 a year. When the act says that the county shall pay for the maintenance of "such child," it evidently and does refer back to the expression "when any child over 10 years of age and under 16 years of age shall be sentenced to and confined in" the house of reform, so that it plainly appears that the liability of the county is confined to children between 10 and 16 years, not only sentenced to, but also confined to, the school of reform. Furthermore, when the legislature came to make separate provision for girls by the 1916 act, although it followed in the main the language of the 1914 act, yet when it came to provide for the maintenance of such girls it used the expression "shall thereafter pay." Inasmuch as the legislature made this change in the wording in an otherwise almost literal copy of the 1914 act it must be deemed that it had a purpose in so doing, and that the legislature meant to change the rule of maintenance where girls were involved. This conclusion seems to have been the view in the Lang case, because the court there said: "The maintenance of the inmates who are between 10 and 16 years of age . . . is . . . paid by the counties." Inasmuch as the judgment of the lower court held the county responsible for the maintenance of all children sentenced between 10 and 16 years of age, though confined after 16 years of age, whether boys or girls, or sent under the 1914 or 1916 act, it is in conflict with these views, and to the extent of such conflict it is erroneous and must be reversed. This disposes of the direct appeal.

On the cross-appeal, the state is insisting that the claims here sued on should bear interest. As a general proposition, claims against the county, which is an arm of the government, do not bear interest in the absence of

an express agreement to the effect that they shall or of statutory authorization for the same. Kline v. Jefferson County, 101 S. W. 356; see note in 17 L. R. A. (N. S.) 552. We find no express agreement to pay interest on the claims here sued on. The only statutory authorization for interest on county claims is to be found in section 1840a of the Kentucky Statutes, which reads:

"That all warrants which the fiscal court of any county of this Commonwealth may direct to be issued shall bear interest at the rate of six per cent (6%) per annum on the amount of the face of said warrant; provided, that said warrant shall be presented for payment to the county treasurer not more than thirty days after the date of the allowance of said claim by said county court, and that if payment shall be refused it shall draw interest at the rate of six per cent (6%) per annum from that date until paid or until called in for payment by the treasurer of the county by which same are issued; provided, however, that the fiscal court of any county of this Commonwealth may anticipate the revenue for the current year and borrow money upon the faith thereof, at a lower rate of interest."

From this section we see that if a claim is reduced to a warrant and payment is then refused upon such warrant it then bears interest at the rate of six per cent per annum from the date of such refusal until paid. It is obvious that a county should not be allowed to defeat the mandatory provisions of this statute by refusing to issue a warrant whereby the claimant may secure prompt payment, or in lieu thereof interest until he is paid. Were it otherwise the county could nullify the plain provisions of this statute and thus escape a just duty imposed upon it. However, the county cannot be said to be recalcitrant in the performance of this duty to issue warrants until demand has been made upon it and it has refused to issue the warrant or failed to do so after reasonable opportunity for investigation and auditing of the same. But if after demand the county does refuse to issue the warrant or fails to do so after reasonable opportunity for investigation and audit, then the claim will bear interest from the date of such refusal or expiration of such time.

It results, therefore, that interest should have been allowed on such claims as the county of Jefferson is liable for, to run from the date of appellant's refusal to certify

the same as hereinbefore set out, as he is made ,by the statutes here in question the agent of the county to set in motion the machinery necessary to reduce the claims created by such statutes to warrants.

The judgment, therefore, on both the original and cross appeal, in so far as it is contrary to the views herein expressed, is erroneous and is reversed.

Whole court sitting.