CASE 15—PETITION EQUITY—JANUARY 5.

# Howell, &c. v. Bristol, &c.

### APPEAL FROM KENTON CIRCUIT COURT.

1. *The amendment of* 1869 *of the charter of the city of Covington,* author-
izing the city council by a unanimous vote to require the northern
portion of Madison Street to be paved with Nicolson pavement at
the cost of the owners of the lots fronting thereon, *is held to be
unconstitutional.*

2. Said amendment confers upon the city council the power to improve
the streets or alleys, etc., or parts thereof, with Nicolson pavement
at the cost of the property owners, "whenever the owner or owners
of the larger part of the front feet of the ground" fronting on the
proposed improvement shall petition therefor, and in no other
state of case. This limitation applies to every street, alley, market-
space, and public place in the city, except the northern portion of
Madison Street, which seems to be the leading thoroughfare in the
city. It places the lot-owners on the northern portion of Madison
Street at the mercy of a unanimous council, and leaves it within
the power of the owners of the greater number of front feet abutting
on every other street, etc., to prevent the improvement of such
street, etc., with "Nicolson pavement" at their individual expense
by merely failing to petition therefor.

3. *Perfect equality* in the imposition of local taxation can not be
attained.
    BUT UNIFORMITY IN THE MANNER OF ASSESSMENT, AND AP-
PROXIMATE EQUALITY IN THE AMOUNT OF THE EXACTIONS, are
essential to the constitutionality of such taxation. This principle is
applied, in this case, to an act authorizing street improvements to
be made under different rules and regulations in the same city at the
cost of the owners of adjacent lots.

4. A law imposing taxation on the general public, the evident intent and
legitimate result of which is to equalize the burden so far as practi-
cable, will not be held as violative of the fundamental law merely
because that desirable end may not be attained.

5. But when, as in this case, the most probable if not the necessary
consequence of the law is to produce the most oppressive inequality,
and to compel a small minority of tax-payers to provide at their

sole expense an improvement of general utility and public interest, the construction of which costs more than double as much as the character of such improvements in general use, and from which, when constructed, the general public derives almost as much advantage as themselves, it assumes the character of an attempted exercise of "arbitrary power" over the property of this minority; it becomes, in the constitutional sense, a taking and appropriation of their property to the public use without compensation.

No such power over the property of the citizen can be constitutionally exercised by any department of our state government.

W. S. RANKIN, . . . .⎫
STEVENSON & MYERS, ⎭ . . . . . . . For Appellants,

CITED

Constitution of Ky., art. 1, secs. 1, 2, 14; art. 13, sec. 14.
Acts of 1849–50, page 239, Charter of City of Covington.
Cooley's Constitutional Limitation, 198.
2 Acts of 1869, pages 620, 621.        15 Peters, 141, 423.
9 B. Monroe, 343, Cheaney v. Hooser.
9 Dana, 515, Lexington v. McQuillan's heirs.
2 B. Monroe, 177, Louisville v. Hyatt.
4 B. Monroe, 149, Williamson v. Commonwealth.
1 Kent's Commentaries, pages 430, 462, 463.

L. E. BAKER, . . . . . . . For City of Covington,

JOHN F. & CHAS. H. FISK, . . . For Appellees,

CITED

Session Acts of 1849–50, page 239, section 1, article 8.
Act of March 16, 1869, 2 Session Acts, 620.
Acts of 1863–64, page 306.        Civil Code, sec. 40.
36 Barbour, 177, The People v. Lawrenee.
1 Acts of 1865, section 2, page 413.
2 Acts of 1867–8, page 427.
2 Acts of 1859–60, page 632.        5 Bush, 229.
6 Bush, 204, City of Covington v. Boyle.
3 Bush, 698, City of Covington v. Casey.
6 Bush, 210, City of Covington v. Dressman, &c
5 Bush, 518, Louisville v. Henderson, &c.
9 Dana, 513, McQuillan's heirs v. Lexington.
4 Bush, 465, Hydes & Goose v. Jones.
5 Bush, 255, Shelby County v. Shelby Railroad Company.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

By chapter 2,270 of Session Acts of 1869 the charter of the city of Covington was so amended as to provide that "whenever the owner or owners of the larger part of the front feet of the ground between any certain points fronting and abutting on any of the streets, alleys, market-spaces, and other public places within said city, shall petition the city council in writing for the improvement of such street, alley, market-space, or other public place, or any part thereof between said points, if said street, alley, market-space, or public place has not theretofore been improved, or if, having been improved or repaired, said petition shall ask that the same may be rebuilt or improved in some other and different manner, said council shall have full power and authority to order, contract for, and procure the improvement or reimprovement of the street, alley, market-space, or other public place, or part thereof, embraced in said petition, by grading, curbing, and paving the same with Nicolson pavement, or with any other materials, in any other manner, as may be petitioned for as aforesaid, at the cost of the owner or owners of all lots and parts of lots fronting and abutting on such street, alley, market-space, or other public place, or portion thereof, so improved. . . . . . . . . . . . . . And when any of the improvements authorized by this act shall have been completed and accepted by the council, said council shall assess and levy the cost thereof as a tax upon all the lots and parts of lots fronting and abutting upon the street, alley, market-space, or other public place, or part thereof, so improved, equally according to front feet, which tax shall have the same force and effect and be collected in the same manner as other taxes levied to pay for street improvements and repairs are now collected by law; and a lien is hereby given in favor of said city upon all said lots and parts of lots to secure the payment of the costs of said improvements, etc.,

which lien shall attach from the time said improvements, etc., are ordered to be made. *Provided*, that said council is hereby given the same power and authority, *without any petition* from owners of ground fronting and abutting upon that portion of Madison Street that lies north of Twelfth Street, *by a vote of all the members of said council elect and in office*, to order, contract for, and procure the improvement, renewal, or repair of said portion of Madison Street, or any part thereof, with Nicolson pavement, or any other material, in any manner said council may ordain, at the cost and expense of the owner or owners of the ground fronting and abutting thereon, that is given by this act to said council to procure the improvement and reim-provement of other streets, alleys, market-spaces, and other public places when the same shall have been *petitioned for.*"

Under this act the city council, by an ordinance adopted by the unanimous vote of the members elect and in office, procured that portion of Madison Street between the north line of Eleventh Street and the south line of Ninth Street, and between the south line of Ninth Street and a line drawn from the south-east corner of Madison and Cooper (or Pike) Streets to the south-west corner of Madison and Pike Streets, to be repaved with Nicolson pavement. The owners of the larger portion of the front feet abutting on that part of the street so improved did not petition the council to procure the improvement to be made, but it seems remonstrated against any such action being taken in the premises.

The appellants, with many others of the property-owners, refusing to pay the amounts assessed against their lots, suits were instituted against them in the Kenton Circuit Court to enforce the statutory liens claimed to exist in favor of the city of Covington under and by virtue of the act from which we have heretofore quoted. Judgments were rendered in favor of the contractor, and the property-owners have appealed.

Testing the act in question by the principles enunciated by

this court in the two leading cases of the City of Lexington v. McQuillan's heirs (9 Dana, 513) and the City of Louisville v. Hyatt *et al.* (2 B. Monroe, 177), we conceive there can be no doubt as to its constitutionality, except in so far as it applies to that portion of Madison Street lying north of Twelfth Street. It is true the act does not divide the city into squares, constituting subordinate municipalities for the improvement of the streets, as did the charters of the cities of Lexington and Louisville, but permits the lot-owners themselves to create such subdivisions or street districts by the selection of certain points upon any given street. But this difference does not, in our opinion, prevent the application of the principles relied upon by the court as sustaining the constitutionality of these charters. But, as will be readily perceived, there is a substantial difference between the provisions of these charters and the *proviso* in the act in question, made to apply solely to a portion of Madison Street.

The municipal authorities of the cities of Lexington and Louisville were empowered to improve their streets at the cost of the lot-owners, when they were petitioned by the owners of the greater part of the ground fronting on any square, or without the petition of such owners by the unanimous vote of the members composing such city councils.

The amendment to the charter of Covington confers upon the city council the power to improve the streets or alleys, etc., or parts thereof, with Nicolson pavement, at the cost of the property-owners, "whenever the owner or owners of the larger part of the front feet of the ground" fronting on the proposed improvement shall petition therefor, and in no other state of case. This limitation applies to every street, alley, market-space, and public place in the city, except a designated portion of Madison Street, which seems to be the leading thoroughfare in the city — a great public highway, in the improvement and repair of which the general public are more

vitally interested than in any other street in the city. To compel the property-owners upon this street to improve and keep it in repair, upon terms similar to those applied to the owners of property on other streets in the city, might of itself be regarded as imposing upon them an undue proportion of the public burdens. But so long as such burdens are so imposed as to keep within what may be legitimately deemed a tax and not a mere spoliation, it is a hardship against which the courts can afford no relief. Perfect equality in the imposition of local taxation can not be attained, but uniformity in the manner of assessment, and approximate equality in the amount of the exactions, are certainly within the range of possibility; and such uniformity and approximate equality were by this court, in the case of McQuillan's heirs, held to be essential to the constitutionality· of such taxation.

The proviso in the act under consideration of necessity destroys uniformity of street taxation in the city of Covington. It places the lot-owners on the northern portion of Madison Street at the mercy of a unanimous council, and leaves it within the power of the owners of the greater number of front feet abutting on every other street, alley, etc., to prevent the improvement of such street, etc., with "Nicolson pavement" at their individual expense by merely failing to petition therefor. The manifest injustice and the glaring inequality of taxation growing out of this discrimination can be seen at a glance, and is clearly demonstrated by the testimony before us.

The superiority of streets improved with "Nicolson pavement" over the ordinary macadamized or bowldered streets has had the effect of attracting to North Madison Street a very large portion of travel and transportation, especially of heavy freights, which would ·naturally have passed over parallel streets and passways. The result is the increased wear of Madison Street and the preservation of these parallel passways; and in proportion as the street taxation upon those

owning property upon the streets thus preserved is decreased the burdens upon the lot-owners on North Madison become the more exorbitant and oppressive.

A law imposing taxation on the general public, the evident intent and legitimate result of which is to equalize the burden so far as practicable, will not be held as violative of the fundamental law merely because that desirable end may not be attained. But when, as in this case, the most probable if not the necessary consequence of the law is to produce the most oppressive inequality, and to compel a small minority of tax-payers to provide at their sole expense an improvement of general utility and public interest, the construction of which costs more than double as much as the character of such improvements in general use, and from which, when constructed, the general public derives almost as much advantage as themselves, it assumes the character of an attempted exercise of "arbitrary power" over the property of this minority; it becomes, in the constitutional sense, a taking and appropriation of their private property to the public use without compensation, and it can not be sustained so long as the safeguards placed around the citizen by our fundamental law are respected and upheld. No such power over the property of the citizen can be constitutionally exercised by any department of our state government; and whenever it is attempted it is the imperative duty of the judiciary to interpose in behalf of those whose constitutional rights are being thereby prejudicially affected.

As held in the case of City of Louisville v. Hyatt, a mere doubt of legislative power "is not enough to justify judicial resistance;" but when, as in this case, the want of such power is susceptible of demonstration, we can not hesitate so to declare, notwithstanding our reluctance to take issue with a co-ordinate department of the state government.

In Hyatt's case this court admitted that it had never been perfectly satisfied as to the constitutional validity of the power

involved and considered in the case of McQuillan's heirs, but sustained it "because they were not able to perceive clearly, or to prove satisfactorily, that the legislature in enacting the eleventh section of the charter of Lexington transcended the boundaries of legislative power prescribed by the supreme organic law of the state;" and herein lies, as we think, the difference between that case and this.

The charters of Lexington and Louisville were upheld because the city governments were vested with similar powers of taxation over all the real estate in their respective munici· palities; and if doubts were entertained whether or not, under these powers, such uniformity and equality of taxation as is contemplated by the constitution could or would likely be secured, it would be a gross perversion of every rule of constitutional construction to apply the principles upon which the decisions in those cases were based to a law which upon its face repels all idea of uniformity or equality.

Nor can the supposed tax be sustained under the powers conferred by the act of February 3, 1864. (Session Acts, 1863–64, page 306.) Although that act, in general terms, authorized the streets, alleys, etc., in the city of Covington to be improved, reimproved, or repaired, in whole or in part, "*in any manner deemed advisable*," at the expense of the owners of the property fronting thereon, yet when the entire act is considered it is evident that the improvements contemplated were such as were in general use at that time. The streets, alleys, etc., might be macadamized or paved with "bowlder or any other sort of stone," but the property-owners could not be taxed to make "Nicolson" or other kinds of wooden pavements. This act was so understood and construed by the city authorities, and hence their application to the General Assembly for the passage of the act of March 16, 1869. It was so construed by the General Assembly, and hence by the second section of the act of 1869 it is provided that "this act is in

Howell, &c. v. Bristol, &c.

*addition* to the powers now conferred by the charter of said
city and the amendments thereto, and shall not be construed
as repealing or in any way affecting the same as now in force."
The last act did, as it was intended it should, confer the
*additional power* of improving and reimproving, the streets
with "Nicolson pavements," and left unaffected the existing
power to "macadamize" or pave the streets, alleys, etc., with
"bowlders or other sort of stone." These conclusions render
it unnecessary to examine the other questions involved in this
appeal.

The judgment of the circuit court is reversed, and the
cause remanded with instructions to dismiss appellee's petition
so far as it seeks to subject the property of appellant to the
payment of any part of the cost of the construction of the
Nicolson pavement in front of his lots, and for such other
proceedings as may be proper.

TO PETITIONS FOR A REHEARING BY COUNSEL FOR APPELLEES JUDGE
LINDSAY DELIVERED THE FOLLOWING RESPONSE OF THE COURT:

By the petitions filed for a rehearing of the questions
involved in this appeal the attention of the court is specially
called to the eighth section of an act amending the charter of
the city of Covington, approved March 9, 1868, which is
insisted to be and remain in full force and effect, and to
authorize the improvement of Madison Street with Nicolson
pavement, independent of the provisions of the act of 1869.

This section is in these words: " That the city council
shall have full power and authority, in addition to the mate-
rials now permitted to be used by the city charter in the
construction or repairs of streets, alleys, market - spaces, or
other public places in said city, to cause the same to be con-
structed, repaired, or renewed with any material or materials
in any manner the council may declare suitable and proper
for the location to be so improved. The city council shall
have power, without a petition from the owners or holders of

property along the line of the street, space, or portion of street, alley, market-space, or other public place, to be altered, repaired, or renewed as aforesaid, to cause the same to be done in any manner it may deem proper, at the cost and expense of the owners of lots and parts of lots fronting or abutting on the same. The taking up of one sort of material and putting the same down again, with or without adding materials of the same kind, or of different kinds, in the same manner as the portion to be improved was theretofore made, or putting down the same materials in any other manner, shall be included in the term '*repairs.*'"

Giving to this statute the construction insisted upon by appellees—that of authorizing, in general terms, the use of any kind of material in the renewal of a street, including the right to renew with the Nicolson pavement—it becomes necessary to determine whether this right is abridged by the act of 1869, and, if so, to what extent.

The act of 1869 authorizes the city, upon the petition of the owners of a majority of the front feet to be taxed, to order, contract for, and procure the improvement or reimprovement set out in the petition by grading, curbing, and paving with Nicolson pavement, or with any other material, as may be petitioned for, at the cost of the lot-owners, and by the proviso permits the same kind of improvement to be made on North Madison Street by a unanimous vote of the council without petition.

These limitations as to the right to improve at the cost of the property-owner certainly conflict with the act of 1868, as construed by appellees, as to all the streets, etc., except North Madison. Being the latest expression of legislative will upon the subjects embraced, it would naturally be allowed to control; but in the second section it is enacted that this act is in addition to the powers theretofore conferred by the city charter and amendments, and it is declared that it shall not be con-

strued as repealing or in any way affecting the same as then in force.

If the literal import of this section be followed to its necessary consequences, it will result in the absurdity of holding the entire act of 1869 not only a work of supererogation, but an absolute nullity. Such a construction is wholly inadmissible.

The provisions of the latter act, making the right of the city to improve with Nicolson pavements at the cost of property-owners depend upon the fact that the improvement has been petitioned for in a given manner, has the effect of abridging the powers conferred by the act of 1868; and, as was held in the case of Hickman v. Littlepage, 2 Dana, 344, it must be deemed *ex necessitate legis* an abrogation of that act to that extent, notwithstanding it declares that it was not the intention of the legislature to repeal or affect the laws in force at the date of its adoption.

It results therefore that the power of the council to improve the streets with Nicolson pavement at the cost of the property-owners without petition, claimed to exist by virtue of the act of 1868, is so far abridged by the act of 1869 as to apply only to North Madison. This being the case, that statute as amended is liable to the same constitutional objections as apply to the proviso in the act of 1869.

We do not regard it as necessary to refer at length to the other questions raised by the petitioners.

We have not decided that the property-owners can not be compelled to pay for that portion of the improvement made of stone or other material authorized to be used before the passage of the acts of 1868 and 1869. Upon the contrary, the judgment of the circuit court is reversed solely because the property of the appellants was subjected to the payment of the cost of the construction of the Nicolson pavement.

Upon the return of the cause that court is expressly

directed to take such further steps as may be necessary and proper.  In so far as any portion of the tax is prohibited by the constitution its collection can not be ·enforced, however proper in a moral point of view it might be for appellants to pay it.

The petitions must be overruled.