## Payne, Individually, etc. v. Fiscal Court of Carlisle County, et al.

(Decided June 22, 1923.)

### Appeal from Carlisle Circuit Court.

1.   Appeal and Error—Grounds for Relief Not Argued in Brief May be Deemed Abandoned.—Grounds for an injunction against the issuance of county bonds not argued in the brief for plaintiff, on appeal may be dismissed without consideration as having been abandoned.

2.   Counties—Petition for Bond Election Need Not Designate Date. —It is unnecessary for the petition for an election on the question of issuance of county highway bonds to designate a day for the holding of the election, since the statute authorizing the proceeding makes no such requirement.

3.   Counties—Petition for Bond Election Need Not Specify Amount of Bonds to be Issued.—A petition for an election on the question of issuance of county highway bonds need not expressly state the amount of bonded indebtedness to be incurred under the authority conferred by the election.

4.   Counties—Petition Held Sufficiently to Designate Amount of Highway Bonds to be Voted on.—A petition requesting an election on the question of whether bonds for the maximum sum permissible under the Constitution and laws of the state for building roads and bridges is sufficient under the maxim that the law regards as certain that which can be made certain, since the amount of bonds can be calculated under Constitution, section 157a.

5.   Statutes—Intention of Legislature in Using Term Must Govern. —The intention of the legislature in using the term "freeholder," in a statute requiring a petition for election for the issuance of

county highway bonds to be by freeholders, must govern in construing the same.

6. Estates—"Freeholder" at Common Law was Holder of Estate of Inheritance or for Life and Entitled to Actual Possession.—At common law, a "freeholder" was the owner of an estate of inheritance or for life, which could only be transferred by livery of seisin.

7. Counties—Widow Prior to Assignment of Dower is Not a Freeholder so as to Qualify Her as a Petitioner for Bond Election.— A widow entitled to dower in her husband's lands is not a freeholder of such lands prior to the assignment of her dower so as to be authorized to sign a petition for an election for the issuance of highway bonds.

8. Counties—Agreed Statement of Facts Held Not to Show Two Petitioners Were Not Freeholders and so Not Qualified to Petition for Bond Election.—An agreed statement of facts from which it appeared that two petitioners for a bond election were residing on lands · formerly owned by their respective fathers and in which their mothers had dower rights, but from which it did not appear whether dower had been assigned in either case, or whether dower rights extended to all the lands, was insufficient to show they were not freeholders and so not qualified.

R. O. WILLINGHAM for appellant.

R. M. SHELBOURNE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

· On the 20th day of November, 1922, the county court of Carlisle county by an order duly and regularly entered on the order book of the court called an election to be held throughout the county on February 10, 1923, for the purpose of taking the sense of the legal voters of the county as to whether its fiscal court might issue the county's bonds to the amount permitted by the Constitution and statutes of the state for the purpose of building, constructing and reconstructing public roads and bridges therein.

The election was advertised and held in strict conformity to the law and there were cast in favor of the proposition 1,275 votes and against it 437 votes, making 838 majority in favor of the affirmative of the proposition. This action was filed by appellant and plaintiff below, J. H. Payne, a citizen and taxpayer of the county for himself and on behalf of other citizens and taxpayers, against the fiscal court, its members and other necessary officers of the county, to enjoin the issuing of any of the

bonds authorized by the election upon the grounds (1), that the petition did not name a day for the holding of the election; (2), that it did not name or designate in express words or figures the total amount of the bonds to be issued; and (3), that the petition filed with the county court requesting the election was not signed by 150 "freeholders of the county," as is required as a prerequisite to the entry of the order by section 4307 of the Kentucky Statutes, and which is necessary to confer jurisdiction on the court to make the order. The pleadings were made up and an agreed statement of facts was filed, and on final submission the trial court dismissed the petition and plaintiff has appealed.

The regularity of the proceedings from their beginning is not called in question, and indeed could not be, since the requirements of the statute seem to have been literally followed both by the county judge in making his orders and by the sheriff in holding the election. Neither of the grounds (1), and (2), is argued in brief for plaintiff, and we might dismiss them without further consideration as having been abandoned. However, we held in the cases of Denton v. Pulaski County, 170 Ky. 33, and Pendleton v. Letcher County Fiscal Court, 194 Ky. 688, that it was unnecessary for the petition to designate a day for the holding of the election, since the statute authorizing it made no such provision, and in the latter case we also held that the petition need not expressly state the amount of bonded indebtedness to be incurred under the authority conferred by the election because the statute authorizing it contained no such requirement. Besides, it is a maxim in law that *id certum est quod certum reddi potest,* and the petition filed with the county court in this case requested the election "for the purpose of taking the sense of the voters therein (Carlisle county) as to whether or not they are in favor of issuing bonds for the maximum sum permissible under the Constitution and laws of the state of Kentucky for the purpose of building roads and bridges in said county." Under the provisions of section 157a of the Constitution the maximum amount of the bonds could not exceed 5 per centum of the value of the taxable property in the county, nor could it exceed a sum which an annual levy of 20 cents on the hundred dollars' worth of taxable property in the county would provide a sinking fund for its final discharge and payment of the annual interest thereon.

Mitchell v. Knox County Fiscal Court, 165 Ky. 543; Cleary v. Pieper, 169 Ky. 434, and Bird v. Asher, 170 Ky. 726. So that, the amount of the bonds to be issued was a mere matter of calculation, and under the maxim, *supra,* the petition must be regarded as sufficient on that point, even though the question had not heretofore been determined in the Pendleton case, *supra.* We, therefore, regard grounds (1), and (2), as without merit.

Ground (3), presents a more serious question. The term "freeholder," means, of course, one who is the owner of a freehold estate, but the difficulty arises when we come to define under modern decisions with exactness what constitutes that character of estate, since it will at once be admitted that the intention of the legislature in employing the term "freeholder" in the statute is the fact which should guide and govern us in construing it. All the authorities, both ancient and modern, agree that a freehold estate is an interest as much as, or more than, a life estate in land either for the life of the holder or *pur autre vie,* and it is an estate of inheritance or one not of inheritance, all of which are, of course, estates transmissible by inheritance except life estate. 16 Cyc. 601; Bouvier's Law Dictionary, vol. 1, 1077; 10 R. C. L. 649-656; 21 Corpus Juris 917-8; 4 Kent Commentaries 259; 2 Minor's Institutes 75; 1 Washburn on Real Property 47, and Blackstone's Commentaries, Book 2, 104. It is not necessary that the fee be an absolute one, since it will be sufficient if it is a defeasible or even a base one, and under the common law the fact that it was a fee tail (which our statute converts into a fee simple) did not destroy its freehold character. None of the cited authorities referred to and no other found by us gives a more extended or circumscribed definition of the term, but Mr. Blackstone in the reference made to his Commentaries states that "An estate of freehold, *liberum tenementum,* or franktenement, is defined by Britton to be 'the *possession* of the soil by a freeman,'" which of course means that the possession must be held under the requisite character of title, *i. e.,* an estate for life or one of inheritance. Further along in the text the learned author says: "Such estate, therefore, and no other, as requires actual possession of the land, is, legally speaking, *freehold;* which actual possession can, by the course of the common law, be only given by the ceremony called livery of seisin, which is the same as the feodal investi-

ture." He concludes by extracting from the ancient writers his own definition of a freehold estate, and says "that it is such an estate in lands as is conveyed by livery of seisin."

The only other authority touching the requirement of actual possession or *the right* of possession by the holder of the land to create him a freeholder that we have found in the case of In re Borough of Mountville, 31 Pa. Super. Ct. 18, the opinion in which says that the holder of a vested remainder in real estate, who of course has no right to immediate possession, is not a freeholder, since his estate is not a freehold. However, in the text in Corpus Juris, *supra*, and that of the other authorities it is shown that a gradual tendency to depart from the strict common law requirement of possession has been manifested by the courts, and in speaking of freehold estates the text says: "Its meaning may depend upon express statutory provisions or it may be used in a statute in the same sense as at common law," and, after stating that under that law no freehold estate could be created to commence in the future, it is added, "but in some jurisdictions the rule is now otherwise." So that if we should apply the strict common law meaning of the term no one holding any titled interest in land could be classed as a freeholder without the right to immediate possession.

In this case it is stipulated that the petition calling for the election contained the signature of 200 legal voters and residents of Carlisle county, and that 147 of them were freeholders and that 47 of them were not freeholders. One of the others, it was agreed, owned an undivided interest in a farm in the county inherited from his deceased father upon which the petitioner resided and that his mother resided with him. There is nothing to show that the mother or any one else owned or held any preceding particular estate in the land nor is any fact shown militating against the right of the petitioner to possession as a joint owner.

As to another petitioner, it is stipulated that he owns a one-fifth undivided interest in a house and lot in Bardwell and the same interest in a farm owned by his deceased father; that the petitioner resides in the house in Bardwell with his mother and that she has a dower interest in it, but nothing is said about any interest, if any, she has in the farm. As to two other petitioners it

is agreed that they own an undivided interest in described real estate which was inherited by them from their deceased father and in which their mother, who resides with them, is entitled to dower; but, whether there has ever been any assignment of dower to the widows in those two cases so as to cover the entire property, or whether it remains unassigned and, therefore, entitling her to occupy only the mansion house and curtilage until assignment, does not appear. If the latter is the fact, then her estate is not a freehold one, since "Prior to the assignment of her dower the widow has no vested freehold estate under the common law. She is not seized of any part of her husband's land, but her right is for most purposes nothing more than a mere right of action." 14 Cyc. 960-1; Shields v. Batts, 5 J. J. M. 12. And some courts hold that until assignment of dower the widow is only a tenant in common with her husband's heirs. (See Cyc., *supra*.)

The voting of the bonds is in furtherance of a public purpose and considerable expense has been incurred in providing for and holding the election. The majority in favor of the proposition, as shown by the returns, indicates a strong sentiment in favor of the improvements, and we think it is the duty of the courts to uphold the election unless clear grounds for invalidating it are shown. Were we to apply in this case the strict circumscribing requisites of the common law with reference to the technical meaning of freehold estates, as defined by Blackstone, at least the last two of the above referred to petitioners would not be freeholders, *if* their mothers' interest extended to the entire real property in which they own an undivided remainder interest jointly with their co-heirs. But, in order to so hold it would devolve upon us to assume that their mothers' dower interest had not only been assigned, but that it extended over the entire property in which the joint interest of the petitioners was held. A proper construction of the stipulation does not justify that assumption, but on the contrary authorizes the conclusion that either no dower had been assigned in those two cases, or if so that it extended to and covered only a portion of the jointly inherited property, which as to some of the contested petitioners appear to be separate parcels. That being true, it appears that the petition was signed by at least 151 freeholders of the county, as coming strictly within Mr. Blackstone's definition of that term.

However, this court in the Pendleton case, *supra,* had before it the sufficiency of a petition for the same character of election and wherein it was recited that the petitioners were "citizens, landowners, legal voters and taxpayers" of the county. It was objected by plaintiff therein that there was no showing that the petitioners were *freeholders,* as required by the statute; but in answering that contention the opinion said: "This designation of the petitioners is manifestly a compliance with the statute since they are shown not only to be freeholders but also legal voters and taxpayers of the county," which was tantamount to saying that a *landowner* in the county was a *freeholder* in the sense that the legislature employed the term in the statute. But for the reasons hereinbefore stated it is not necessary to and we do not now determine that question.

Having reached the conclusion that the petition in this case was signed by the requisite number of qualified petitioners, and that the other objections to issuing the bonds are without merit, it results that the judgment was proper and it is affirmed.