## County Board of Education of Jefferson County et al. v. Liter.

(Decided January 25, 1929.)

494

BURWELL K. MARSHALL and HARRIS COLEMAN for appellants.

HARRY E. TINCHER and FRANKLIN S. FITCH for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Appellee and plaintiff below, W. W. Liter, is a farmer residing in Jefferson county. He filed this action in the Jefferson circuit court against appellants and defendants, Fred O. Nuetzel, clerk of the Jefferson county court, and Ray Kirchdorfer, treasurer of Jefferson county, to obtain a mandatory injunction against the clerk requiring him to draw an order on defendant Kirchdorfer, as treasurer of the county, in payment of two claims for alleged damages sustained by plaintiff, growing out of the killing and injury to his sheep by dogs whose owners were unknown to him, and which claims were tendered to, and later filed with, the clerk pursuant to the provisions of section 68b-27 of the 1922 edition of Carroll's Statutes. The prayer of the petition as amended also asked that the county clerk be enjoined from issuing his order on the county treasurer for the payment of similar claims subsequently accruing, and to enjoin the treasurer from paying any such subsequently accruing claims until plaintiff's two claims were satisfied in the manner provided by the statute.

Plaintiff's pleading set up two claims for damages produced by dogs, whose owners were unknown, one of which was sustained by him on February 9, 1926, and amounted, according to his contention, to the sum of $415, one item of which was "$300.00 damage to flock." The remainder represented the value of killed and destroyed sheep and lambs. The other claim was for alleged losses sustained on September 29, 1926, and was for the total amount of $380, $150 of which was "damage to flock." The board of education of Jefferson county intervened in the cause upon the ground that it was entitled to any surplus of the fund, out of which the claim must be paid, under the statute commonly known as the "Dog Tax Law," and being chapter 112, page 483, Acts of 1918, and now sections 68b-1 to and including 68b-37 of the 1922 edition of the Statutes. In its intervening pleading it opposed all relief to plaintiff based upon either of his

claims upon various grounds, among which was the insufficiency of the two claims, as and when presented to the county court clerk with the request to issue his order on the county treasurer as is required of him by section 68b-27 of the Statutes, supra. The two officers made the same defenses, and another one of which was that one of the appraisers of the alleged September loss was not a "landowner" of the county, and for that additional reason the appraisement and certification of that claim was invalid. The court sustained a demurrer to the pleading seeking payment of the February claim of plaintiff, and dismissed it, and, upon trial before a jury on issues of fact submitted to it, the court sustained plaintiff's motion for a peremptory instruction upon his second or September claim, having first overruled defendants' motion for a similar one, and from the judgment so allowing that claim defendants moved for and obtained an appeal in this court, and plaintiff has prosecuted a cross-appeal from the judgment disallowing his February claim and refusing injunctive relief sought by him with reference thereto in his original and amended petitions.

A great many questions are argued and discussed in briefs of counsel for both sides, but we deem it unnecessary to consider but two of them, (1), The insufficiency of the certification of the two claims; and (2), the urged disqualification of one of the appraisers who were appointed and acted in the making out of plaintiff's second or September claim.

■ The last literary paragraph or sentence of section 68b-27, supra, was before this court for interpretation in the case of Nichols, County Court Clerk, v. Logan, 184 Ky. 711, 213 S. W. 181, as were also other questions with reference to the involved statute, and a most painstaking consideration by the whole court resulted in the conclusions expressed in that opinion, in which it was conceded that some parts of the statute were loosely drawn and considerably confused; particularly that part composing the paragraph above referred to of section 68b-27, supra. After elaborate discussion, it was interpreted so as to read: "No person shall receive any order for any claim (for) assessment of damages until the county judge (or) justice of the peace, before whom the claim was made has certified that within twenty-four hours after the carcasses of the live stock or property

killed (were) located due diligence was made to ascertain whose dog or dogs did the damage." After first discussing cases and authorities authorizing the transportation and sometimes substitution of words in order to arrive at the intention of the Legislature in the enactment of statuates, we endeavored therein to point out the intention of the Legislature in the enactment of the ambiguous clause, supra, as a basis for the adopted reformed one, and all in accord with permissible rules for interpretation, and in doing so we said: "What, then, did the Legislature intend to express by the language now being considered? Under the old (1906) act it was provided that a claim for damages should be made within twenty-four hours after the claimant discovered the injury to his stock. The new act provides in the latter part of section 25 that 'any owner or keeper of such dog or dogs shall be liable to the county in which the damages occurred to such live stock or poultry in a civil action for all damages and costs,' etc. The language under consideration required the county judge or justice of the peace before whom the claim was made to certify that due diligence was made to ascertain whose dog or dogs did the damage and such certification was made a prerequisite to the claimant receiving a warrant from the county court clerk. Manifestly it was not intended that the county judge or justice of the peace should only be required to give the certificate as to diligence in ascertaining whose dog or dogs did the damage within twenty-four hours after the assessment of the damage, and which assessment might be made at any time after the injury was done to the stock. This would not only be an abandonment of the purpose expressed in the old act (and plainly inferable from the terms employed in the new one), but would likewise militate against affording the county an opportunity to recover the damage from the owner of the dog or dogs that inflicted it. Every one knows that the evidence leading to a discovery of whose dog or dogs did the damage is much fresher and more easily obtained within twenty-four hours after the infliction of the damage than at a period more removed from that time, and it was the evident purpose of the Legislature that the 'due diligence' provided for should be exercised as near to the time of the infliction of the injury as possible and that the fact should be certified on the report of the appraisers."

It will thus be seen that the opinion in that case interpreted the phrase "within twenty-four hours" as

designating the time within which the owner of the injured stock should exercise diligence to ascertain whose dog or dogs did the damage, and that it must be done immediately following the discovery of the damage, including animals killed as well as those injured, and that the certificate required by section 68b-26 to be made by the officer appointing the appraisers upon their appraisement should itself state that such diligence was exercised by the claimant within 24 hours after such discoveries by him. We find nothing in any section of the statute limiting the time within which the officer should be, applied to (county judge or justice of the peace) by the claimant sustaining the damages, and, without going into detail with reference to conflicting dates concerning the involved claims in this case, it is sufficient to say that we do not think either of them is invalid by reason thereof. However, it is perfectly manifest that the certificate of the justice of the peace in both asserted claims did not conform to the interpretation given to the statute in the Nichols case. On each of the claims it reads: "I further certify that due diligence has been made to ascertain whose dog or dogs did the damage and where the carcasses of the live stock or poultry killed, and for which damages have been assessed, were located; within twenty-four hours after the assessment of damages."

It will be observed that the certificate seems to follow the ambiguous, confused language of the statute before we remodeled it by our interpretation in the Nichols case, and it does not certify that due diligence was made within 24 hours *after* the *discovery* of the damage by the claimant to ascertain whose dog or dogs did the damage; but, instead, it certifies that such diligence was exercised "within twenty-four hours after the assessment of the damages," which may have occurred days and possibly weeks after the damage had occurred and after the claimant made his discovery thereof. The purpose to have the certification apply to the exercise of such diligence within 24 hours after the discovery of the damage by claimant is clearly pointed out in the excerpt, supra, from our opinion in the Nichols case to which we still adhere. Neither of the claims in this case, therefore, being properly certified under the statute as interpreted in the Nichols opinion, the defendant county court clerk was justified in refusing to draw his order on the treasurer, and the latter would have been

justified in not paying the claims, if such an order had been issued, since it must be remembered that the county court clerk, in drawing the order, must necessarily look to the claim as made out and presented to him, and, if it does not conform to the requirements of the statute, he not only has the right to refuse to issue the order, but it would also be his duty to decline to do so, and for that reason alone the court erred in allowing the September claim, and for the same reason it properly disallowed the February one. That the discussed requirement is mandatory we have no doubt, since the statute says that "no person shall receive any order for any claim until," etc., thereby peremptorily withholding the right to it, unless all requirements of the statute, including the certification by the officer applied to, are complied with.

■ As we have seen, section 68b-25 requires that the appointed appraisers "shall be a resident land owner of the county and not related to claimant by either blood or marriage." We are likewise of the opinion that it is mandatory, and that the September claim is invalid, for the additional reason that one of the appraisers was shown not to be a landowner of Jefferson county or a landowner at all. Without entering into an extensive discussion of when a statutory requirement is directory or mandatory, and without citing the numerous cases in this court in which the question was presented, discussed, and determined, it is sufficient to say that this and all other courts, as well as text-writers upon the subject, recognize and apply the general rule that, "whether a particular statute is mandatory or directory, does not depend upon its form, but upon the intention of the Legislature to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other." 2 Caldwell's Kentucky Judicial Dictionary, p. 2081. See, also, Hays v. Burns, Drainage Commissioner, 216 Ky. 827, 288 S. W. 764; Brodie v. Hook, 135 Ky. 87, 121 S. W. 979, and Caldwell County v. First National Bank, 151 Ky. 720, 152 S. W. 757. The Legislature in enacting the statute here involved in prescribing the qualifications of appraisers for the assessment of the damage sustained by the claimant no doubt had in mind the possibility of perpetrating glaring frauds on the dog tax fund by irresponsible appraisers who without such qualification might be nonresident paupers, and wholly disinterested in the

preservation of such fund; while a resident landowner could be more confidently depended upon to act wisely, justly, and honestly in the assessment of damages. If the prescribed qualifications should be held as directory, then one could be appointed as appraiser who was neither a resident of the county nor of the state, and without owning any character of property in either, and who would thereby be about as little interested or concerned in the proper disbursement of the fund out of which the claims are to be paid as it is possible to imagine. The Legislature no doubt had in mind that the appraiser should first be a resident of the county, and that he should occupy the status (as much as possible) of a permanent resident in the county through his ownership of land, and as such would be the more interested in the equitable distribution of the fund, and all of which, we think, was mandatorily required and wisely conceived.

Moreover, in construing similar language prescribing qualifications in statutes relating to elections to office, and others involving the submission of public questions, and which was no more mandatorily expressed than the one now under consideration, we uniformly have held such provisions as mandatory, an illustration of which is to be found in the case of Payne v. Fiscal Court of Carlisle County, 200 Ky. 41, 252 S. W. 127, which involved the legality of the call of an election for the purpose of voting a road bonded indebtedness on the taxable property in the county of Carlisle. The statute with reference to the calling of the election required, as an initiatory step, the filing of a petition with the county judge, signed by "one hundred fifty legal voters, who are free holders of the county," asking and requesting the holding of such an election. It was recognized in that and other opinions involving the same question that the requirement that a petitioner should be a freeholder of the county was mandatory; and we have consistently so construed similar provisions of our election statutes with reference to the printing of the name of a candidate on an official ballot, when put there by a designated number of prescribed, qualified petitioners. In such cases we have without exception said that the requirement of the statute with reference to the qualification of the petitioners was mandatory. We have hereinbefore pointed out the reasons for such an interpretation in this case, and they are equally as potent and convincing as the reasons for the same conclusion in the classes of cases referred

500

to. We therefore conclude that the September claim of plaintiff involved in this case was illegally made out because one of the appraisers was not a resident landowner of Jefferson county.

However, it might be proper to add that, since the defects herein found to exist were not in any manner brought about by plaintiff, but resulted from derelictions of the justice of the peace to whom he applied, he should yet have an opportunity to require that officer to amend his certificate to each of his claims and to reappoint appraisers upon the application made for the September claim, and if such officer, from personal knowledge or from evidence obtained by him, is convinced that the required diligence as hereinbefore described was exercised by the claimant, and the officer can so certify, then plaintiff should have the benefit of such certification and the opportunity to again present his claims when such requirements shall have been performed. Whether the county clerk is absolutely bound by the amount of damages in a properly made out claim without the right to contest its accuracy upon the merits is a question that we do not now determine.

For the reasons stated, the judgment on the original appeal is reversed, with directions to dismiss the petition without prejudice as to it; and it is affirmed on the crossappeal, but the judgment dismissing the claim involved on that appeal will be without prejudice to the right of plaintiff to have it corrected as hereinbefore pointed out, if he can do so.