# Fox et al. v. Board for Louisville and Jefferson County Children's Home.

(Decided March 8, 1932.)

2

S. L. GREENEBAUM for appellants.

ROWAN HARDIN for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

Prior to 1912 two corporations were created by acts of the General Assembly of Kentucky, viz. the Louisville Industrial School of Reform, and the parental Home and School Commission of Jefferson county, located in the city of Louisville, Ky. These institutions were authorized to act independently of each other as corporate agents of the state, charged with powers to provide for the care, the maintenance, the training, and the education of certain classes of children residing in Jefferson county.

In 1920 the General Assembly repealed the original, amendatory, and supplementary acts creating and authorizing their operation. The same act authorized the organization of a corporation in the name of "the Board for Louisville and Jefferson County Children's Home" for the purpose of taking over the property and assuming the authority, duties, and powers of both of the old institutions. Ky. Stats., secs. 938b-1 to 938b-23, embrace the entire act. The Board for the Louisville & Jefferson County Children's Home is a body politic, organized by virtue of these sections of the statutes, with power to acquire, either by lease, purchase, gift or condemnation, lands or other property necessary or suitable for establishing and maintaining a home for the general purpose of caring for the development, the training, and the education of dependent, neglected, delinquent and incorrigible children.

A provision of the act authorizes the officers of the institution to receive, discharge, or parole from the home

4

of the appellee children committed by any court or officer, or to keep, maintain, train, and educate them for such periods for which they may be respectively committed, during the time they are kept by the institution.

The appellee is empowered and directed by the act to provide and maintain and to cause to be provided and maintained, for the children received into its home, such schools and forms of instruction in branches of useful practical knowledge as necessary or proper for their education, and for the acquirement and practice by the children of useful labor or trades, suitable to their years and capacity. For that purpose it is made the duty of the officers of the institution to cause the employment and occupation of the children in its home and on its grounds and premises. It is clothed with power, within its discretion, to bind out any child as an apprentice to any person or persons, to learn proper trade and employment as in its judgment may be most conducive to the reformation or amendment or benefit or advantage of such child. The members of its board of directors are required to be selected and appointed by the mayor of the city of Louisville and by the judge or the county court of Jefferson county; each member to be a bona fide resident of the county or city, not less than 25 years of age; one-half the members to be of one political party, and the other of the other political party which at the last preceding general election in the county, respectively, cast the highest, and next highest, number of votes.

For the purpose of providing necessary funds for maintaining the institution, and carrying out the purpose of the act, the fiscal court of Jefferson county and the general council of the city of Louisville are each empowered and directed to levy and collect a tax of not less than $3\frac{1}{4}$ cents nor more than 5 cents on each $100 of the taxable property in the county and city, respectively, as determined by the last regular assessment of the county and city, respectively. All funds derived from such levy and collections are to be paid to, and expended by, the appellee for the purposes we have outlined. The amount the appellees may expend annually for the work of the institution is not to exceed the total sum derived through the levy and collection of the taxes for the year in which the levy is made and as supplemented by any funds donated or given for the same purpose. It is made the duty of the board of directors during the month of De-

cember of each year to prepare and certify to both the fiscal court and the general council a financial statement setting forth the total fund which in its judgment will be needed for the ensuing fiscal year for the maintenance of the home, and carrying out the purpose of the act, showing the estimated balance, the funds, estimates and expenditures for that purpose, and any other detailed information within the power of the board to furnish and as requested by the fiscal court and general council. In making the budget, the board of directors is required to divide and allot the revenues, funds, and assets estimated to be necessary and to become available for each fiscal year to the various branches or departments of expenditures to be made for the maintenance of the institution and carrying out the provisions of the act in this respect. Other duties are imposed by the act upon the board of directors and the officials of the institution, and other powers are conferred upon them not necessary to be considered in a disposition of this case.

Sections 938b-1 to 938b-23 inclusive, were, for a number of years, complied with by the city and the county. The necessary levies of the taxes were respectively made. by the general council of the city and the fiscal court up to 1931. The council for 1931 made a levy according to the board's budget, as authorized by the act, of 3¼ cents on each $100 of taxable property within its corporate limits. The fiscal court levied in 1931 only 1 cent on each $100 taxable property of the county, but refused to recognize the budget certified to it by the board, and to make any other or further levy for the maintenance of the institution for the year 1931. The statement, or budget required, was filed by the board of directors with the fiscal court of the county, showing the necessity of the levy by the fiscal court of the 3¼ cents on each $100 of the taxable property in the county, for the maintenance of the institution in accordance to the provisions of the act. The appellee endeavored to induce and to persuade the fiscal court to levy a minimum rate of at least 3¼ cents authorized to be made by the provisions of the act. At that time there was under the jurisdiction and control of the appellee 1,680 children; of these 650 were inmates of the home, and were being clothed, fed, schooled, and taken care of by it; 680 were outside of the home, for some of whom the appellee was obliged to pay for their necessities, including board, and yet others of them were partly supported by it.

This action was instituted to require the fiscal court to discharge its mandatory duty by making at least the minimum levy in conformity with the statement or budget of the appellee's board of directors and in accordance to which the city of Louisville had previously made its levy as required by the act. The trial court decreed an additional levy be made by the fiscal court of 2¼ cents on each $100 of the property subject to taxation for county purposes. The fiscal court appeals.

The appellant vigorously argues that the act imposes a mandatory duty on the fiscal court to make the levy sought in the budget of the board of directors, and that it is a violation of sections 181 and 181a of the Constitution of Kentucky.

It is argued the appellee is a private corporation, not under the authority or supervision of the fiscal court, but independent of it, and that to impose the tax in accordance to the provisions of the act of 1920 is equivalent to taxation without representation, and for a private corporation. It is also argued that it imposes double taxation, and is by reason thereof a violation of section 171 of the Constitution. It cannot be doubted that sections 181 and 181a, supra, directly and positively forbid the General Assembly imposing taxes for the purpose of any county, city, town, or municipal corporation.

The power to tax is a sovereign power which can be exercised only by the Legislature, as provided by the Constitution. Barrow v. Bradley, Mayor, 190 Ky. 480, 227 S. W. 1016. The exercise of such power as here given by the Legislature is not inconsistent with our form of government, which recognizes the existence of local self-government, with the power in it to determine, in its discretion, the necessity of imposing the levy of a tax for purely municipal purposes. McArthur v. Nelson, 81 Ky. 67, 4 Ky. Law Rep. 754. The Legislature has large authority in determining the power and framework of local county government and its local institutions. Its power in this respect is limited by the Constitution only. Mitchell v. Knox County Fiscal Court, 165 Ky. 543, 177 S. W. 279.

The customary local powers given by our form of government to a county or other municipality is that of taxation for municipal purposes. Such taxation by a county is so inescapable and incident to our form of government that, so long as the form exists, the power

of such local taxation cannot be abolished. Albany Bottling Co. v. Watson, 103 Ga. 503, 30 S. E. 270; State of Montana ex rel. M. H. Gerry v. Edwards 42 Mont. 135, 111 P. 734, 32 L. R. A. (N. S.) 1078, Ann. Cas. 1912A, 1063. In a certain sense, oftentimes taxes for state purposes are also apparently for local or municipal purposes, yet they are authorized and may be demanded of the county by the state, for the general benefit of all the people, and turned over to the localities as a matter of apportionment. On this theory the Legislature may compel a local subdivision or a county to levy taxes for the construction and maintenance of a local road (McQuillin on Municipal Corporations, vol. 1, secs. 227, 228; Lent v. Tillson, 72 Cal. 404, 14 P. 71; People ex rel. Raymond v. Chicago & A. R. Co., 193 Ill. 364, 61 N. E. 1063); for the construction of a bridge (State ex rel. Bulkeley v. Williams, Treasurer, 68 Conn. 131, 35 A. 24, 421, 48 L. R. A.. 465); or a rapid transit subway (Prince v. Crocker, 166 Mass. 347, 44 N. E. 446, 32 L. R. A. 610); or the construction of a tunnel to be leased to a railway company (Browne v. Turner, 176 Mass. 9, 56 N. E. 969); or the issuance of local bonds for a canal (Thomas v. Leland, 24 Wend. [N. Y.] 65; Howell v. Bristol, 8 Bush 493); or impose an obligation to support paupers within their limits (Hagar v. Reclamation Dist., 111 U. S. 701, 4 S. Ct. 663, 28 L. Ed. 569; Town of Fox v. Town of Kendall, 97 Ill. 72; Polish Manual Training School for Boys v. Cook County, 289 Ill. 432, 124 N. E. 629); or for medical treatment for habitual drunkards within the corporate limits and committed by the courts to the medical institution for treatment, and where they are themselves unable to pay therefor (City of Baltimore v. Keeley Institute of Md., 81 Md. 106, 31 A. 437, 27 L. R. A. 647; Salt Lake County v. Salt Lake City, 42 Utah 548, 134 P. 560); or a local tax to establish a home for delinquent children (Salt Lake County v. Salt Lake City, supra); or delegate to a county or city the power of taxation for school districts (Minsinger v. Raw, 236 Pa. 327, 84 A. 902, Ann. Cas. 1913E, 1324); or to operate an ambulance confined in its use to indigent people (Ducey v. Inhabitants of Webster, 237 Mass. 497, 130 N. E. 53); or to make a toll bridge free (Bussey v. Gilmore, 3 Me. [3 Greenl.] 191); or to pay the expense of the board of health (State ex rel. Peeler v. Rose, 26 Fla. 117, 7 So. 370); or to support paupers (Southern Ry. Co. v. Hamblen County, 117 Tenn. 327, 97 S. W. 455; Cox v. Commissioners of Pitt

County, 146 N. C. 584, 60 S. E. 516, 16 L. R. A. [N. S.] 253) ; or require the county to contribute to the support of county juveniles (State ex rel. Webb v. Brown, 132 Tenn. 685, 179 S. W. 321) ; Robison v. Wayne Circuit Judges, 151 Mich. 315, 115 N. W. 682) ; or to build a home for the feeble-minded in the county where the county will be especially benefited by the location of the institution in the county (Cox v. Commissioners of Pitt County, 146 N. C. 584, 60 S. E. 516, 16 L. R. A. [N. S.] 253) ; or pay the expense of an exhibition of the products of the county at a demonstration or exposition as a county purpose (Bevis v. Wright, 31 Idaho 376, 175 P. 815) ; or to require the fiscal court of the county where the duties are performed locally to provide offices for the registrar of vital statistics (Furlong v. Darnaby, 206 Ky. 68, 257 S. W. 707) ; or to require a county to appropriate to a county farm bureau a sum equal to the total amount in the treasury of the local farm bureau (Hendrickson, County Judge, v. Taylor County Farm Bureau, 196 Ky. 75, 244 S. W. 82) ; or to compel a city to maintain a public school (City of Louisville v. Com., 134 Ky. 488, 121 S. W. 411) ; or to require a county to pay a $5 arresting fee for violation of the liquor law (Duke, et al. v. Boyd County, 225 Ky. 112, 7 S. W. (2d) 839) ; or to require a county board of education to bear the expense of registration and election held for the purpose of selecting a board of education of the city (Furlong v. Darnaby, 206 Ky. 63, 257 S. W. 707) ; or to require a county to pay the expenses of the inmates of the house of reform committed from the county (Tincher, Judge, v. Com., 208 Ky. 661, 271 S. W. 1066; Lang, Judge, v. Com., 190 Ky. 29, 226 S. W. 379) ; or to require the fiscal court to make a levy sufficient to raise a sum found necessary by the board of education for the maintenance of county schools (Prowse v. Board of Education, 134 Ky. 365, 120 S. W. 307) ; or to authorize the county board of education to prepare and lodge with the fiscal court a budget, and to require the fiscal court to levy and collect taxes accordingly (Fiscal Court v. Board of Education of Logan County, 138 Ky. 98, 127 S. W. 527) ; or require a municipal corporation to take steps to impose taxes for the maintenance of pensions for city policemen (Board of Trustees v. Schupp, 223 Ky. 269, 3 S. W. (2d) 606) ; or to require municipalities to pay the expense of an inquest held by a coroner (Whittenberg v. City of Louisville, 238 Ky. 117, 36 S. W. (2) 853) ; or to require the

fiscal court to furnish the county superintendent of schools with an office free of charge to the state (Schultz, Supt., v. Ohio County et al., 226 Ky. 633, 11 S. W. (2d) 702) ; or to require a tax to be levied by the fiscal court for the expense of juvenile courts (Campbell County v. City of Newport, 174 Ky. 712, 193 S. W. 1, L. R. A. 1917D, 791).

The cases, supra, sustain the statement that the state may constitutionally, either directly or through an agency of its own selection, demand and require a county to levy and collect taxes for the aid of schools, roads, bridges; to secure and promote public health, or the health of the indigent, or for police purposes to preserve public peace, and for all general public purposes of whatever nature in which the state at large is concerned. Lancaster v. Clayton, 86 Ky. 373, 5 S. W. 864, 9 Ky. Law Rep. 611.

Campbell County v. City of Newport, 174 Ky. 712, 193 S. W. 1, L. R. A. 1917D, 791, and District Board of Tuberculosis Sanitorium Trustees for Fayette County v. City of Lexington, 227 Ky. 7, 12 S. W. (2d) 348, 354, do not announce a contrary principle. In the first case the Legislature authorized the county to levy and collect taxes to support a juvenile court, and by its enactment undertook to confer on the county the power to require the city, without its consent, to pay one-half the expense of the juvenile court. The action was by the county to recover of the city of Newport a portion of the expenses the county had incurred in maintaining a juvenile court. It was decided that the county could not recover of the city, "first, because the suit was an attempt on the part of Campbell county to impose a tax on the property of citizens of Newport without their consent, and, second, because it was an attempt to lay a tax on a part of the property of the county while exempting other like property in the county from the payment of the tax." It was expressly held therein that the Legislature had power to establish juvenile courts for counties as well as cities and to authorize the city and county to levy a tax for the purpose of maintaining it. To the extent the act attempted to authorize a county to compel the city to contribute to the support of its juvenile court, this court held it was invalid.

A county is endowed by sections 181 and 181a of our Constitution with the twofold character of a municipal corporation. The power and capacity of the one is exer-

cised for purely municipal purposes for the benefit of its citizens, and, in the exercise of such power or capacity, it does not depart in any substantial degree from a private corporation organized under the laws of the state with which the state at large has only incidental concern, such as it may have in the acts of other private corporations. Board of Trustees of Policemen's Pension Fund v. Schupp, 223 Ky. 269, 3 S. W. (2d) 606; Crane v. City of Siloam Springs, 67 Ark. 30, 55 S. W. 955; San Francisco Gas Co. v. San Francisco, 9 Cal. 453; Holland v. San Francisco, 7 Cal. 361.

The other is its governmental character, in which it exercises a part of the power of a sovereign or the power of the state, for governmental purposes in which the state at large is concerned. The line between the dual nature of a county corporation is frequently hard to determine or to draw a line of distinction between the two, or between the provisions of the Constitution for the local convenience of its citizens and matters which are provided by the Constitution for such corporation in its governmental capacity. It is in its quasi private corporate capacity in which it acts for the benefit of its citizens exclusively and in which the state has no concern, and in the exercise of which it may lay and impose taxes in its discretion. People v. Batchellor, 53 N. Y. 128, 13 Am. Rep. 480. In its political or governmental capacity, it has no discretion but to act as the state which has created it has commanded or required within constitutional limits. In its capacity as a private corporation, it may act in its own discretion as any other private corporation, for the benefit of its citizens, without the power of the state to make it move and act. 1 McQuillen, Municipal Corporations, secs. 176, 183, 219, et seq.

The general public of the state is not interested in the imposition of taxes for purely municipal purposes, and it is the levying of taxes for such purposes that sections 181 and 181a forbid the General Assembly to impose and levy taxes for county, city, town, or other municipality. The power of the county to levy and collect taxes for both municipal and purely governmental purposes must come from the state. The state may as its pleasure withhold from the county or grant to it the authority to levy taxes for such governmental purposes, or exercise such power itself. The county derives all of its powers and assumes all of its burdens by virtue of

legislative enactment, except those conferred or imposed by the Constitution. Forsythe v. Pendleton County, 205 Ky. 770, 266 S. W. 639; Barrow v. Bradley, supra; Tipton v. City of Shelbyville, 139 Ky. 541, 107 S. W. 810, 32 Ky. Law Rep. 1123; Orphan Society of Lexington v. Fayette County, 6 Bush 413.

In the case of District Board of Tuberculosis Sanitorium Trustees for Fayette County v. City of Lexington, 227 Ky. 7, 12 S. W. (2d) 348, 352, the act authorized the fiscal court of the county of Fayette which contained a second class city to impose a tax of not less than 3 cents nor more than 6 cents on each $100 of taxable property in the county, and required the general council or board of commissioners of the city to levy a tax of not less than 6 cents nor more than 8 cents on each $100 of the taxable property within the city, for the operation and maintenance of a tuberculosis sanatorium established in and for the county and conducted and controlled by the county.

In stating our conclusions therein, we used this language:

"These levies are fixed by the fiat of the fiscal court in establishing the district; the action of the city in making the levy being purely perfunctory, at least to the extent of the minimum rate. The city is not accorded any political rights. It has no voice and practically no representation, except it is permitted to select two of the eleven members of the district board, an innocuous gesture. Its financial condition is not considered, and it is given no opportunity to protest. Its people are accorded no privileges or benefits except such as they receive from the county, so that, as a political subdivision, it cannot be said that the city is at all interested in the institution. Clearly this is in violation of both the letter and spirit of the constitutional provisions, supra. . . .

"It is also obvious that the act imposes double taxation upon the citizens of the city, and in that respect conflicts with the uniformity provisions of section 171 of the Constitution. We have seen that the sanatorium is a county institution established and controlled by county agencies. In a district composed of a single county, the county is the geographical and political unit of the district. Logi-

cally it is the taxing unit of the district, as it not only determines whether the district shall be established, but also, if it decides in the affirmative, its action arbitrarily creates an obligation upon and fixes a minimum tax rate for both municipalities for the support of the institution; the city rate being three times as high as the rural rate on the same taxables. Certainly this constitutes double taxation in its most pronounced form."

In the present case the minimum and maximum rates of levy by the city and county are identical, but the county is not given authority to levy for the city and vice versa. The one is not liable for the tax levied by the other, nor required to turn over to the other its taxes, or authorized to expend the taxes of the other. Each taxing unit is required to make its own levy and to make its own collections of its own taxes on the property subject to taxation according to its own assessment. When so doing, they are but arms or branches of the state government, acting independently of each other. Forsythe v. Pendleton County, supra.

The act under consideration recognizes the county and city as independent taxing units. It regards their corporate entity as a thing apart from a geographic boundary, although the county embraces the territory within which the city performs its functions. Whitt v. Wilson, 212 Ky. 281, 278 S. W. 609. It imposes a duty on two taxing units invested with the independent power to tax, yet one is within the territorial limits of the other. One is the county of Jefferson and the other the city of Louisville. The enactment has not authorized or required the exercise of the power to tax by the one taxing unit upon the other which possesses a like power to impose taxes for like purpose. It has precisely the same right to require one taxing unit in its government capacity to levy a tax for a public purpose in which the state is concerned and to require at the same time the other taxing unit in its governmental capacity to levy a tax on the same property for such purpose. The case of District Board of Trustees v. City of Lexington, supra, clearly recognizes and sustains the right of the Legislature to require either or both of the governmental agencies possessing the power of taxation to exercise that power in behalf of the state for the same public purpose. This does not bring the authorized taxation in this case within the category of "double taxation."

"To constitute 'double taxation,' objectionable or prohibited, the two or more taxes must be (1) imposed on the same property, (2) by the same state or government, (3) during the same taxing period, and (4) for the same purpose." Cooley on Taxation (4th Ed.) vol. 1, sec. 223, p. 475.

There is a distinction between an indirect duplication of a tax and "double taxation." The taxing of property by the county and the city for their respective municipal purpose for the same period of time on the same property may be regarded as an indirect duplication, but it is in no sense "double taxation." It is common knowledge that counties levy and collect taxes for county purposes on taxable property situated in the cities and towns therein. At the same time the cities and towns collect taxes on the same property situated therein for the same purpose of the city or town.

It is true the county levies and collects taxes on the property within and without the city of Louisville for county purposes, including the work of the appellee, but the mere fact that the act also authorizes the city to levy and collect taxes on the property within the city does not, in so far as the county is concerned, bring the county's levy and collection of taxes thereunder within the meaning of objectionable, or prohibited, double taxation. The act demands and requires the county to levy and collect the taxes on all property alike within the county, whether within or without the city. For this reason, the county is without right to complain against the act on the ground that it is an infringement of section 171 of the Constitution requiring the levy and collection of taxes uniform within the class and territory.

The mere fact that the money so collected is expended through the instrumentality of the appellee as an agent of both the county and city does not affect the constitutionality or validity of the act under which their respective governmental duties are discharged for their joint purpose.

The act authorizes, directs, and requires the county judge and the mayor to designate, select, and appoint the members of the board of directors of the appellee. It is mandatory in this respect. For this reason it is argued that the act authorizes taxation without representation. The power and authority of selection and appointment of the board of directors are derived from the act.

The persons whose property may be taxed by reason of the acts of the directors were represented in the General Assembly at the time of its enactment. Again they were represented in a sense by the Governor who permitted it to pass the power of veto. The Legislature did not proceed without a hearing by the taxpayers affected by the act, for their representatives were in the Legislature and took part in the proceedings by which the act was passed. So they had an opportunity to be heard, if such hearing was necessary, prior to the enactment of the law. The mayor and county judge of the county court who select and apoint the members of the board of directors of the appellee were elected by the vote of the people, and, when so appointing the directors, they may be regarded as more truly representative of the taxpayers than the whole body of the Legislature of which ninety-nine one-hundredths may be taken from other counties, and, unless virtual representation be recognized as authorizing taxation, that is, if none may be rightfully taxed, but such as have a right to vote for a whole or a part of the taxing body, a large number of taxpayers and a large portion of the property within the state must be excluded from the power of both general and local taxation, even if the Constitution made all offices elective. Williams v. Eggleston, 170 U. S. 304, 18 S. Ct. 617, 42 L. Ed. 1047; Justices of Clarke County v. P., W. & K. R. T. Co., 11 B. Mon. 143.

The act at least mandatorily requires the fiscal court to levy and collect the minimum tax rate when required by the board of directors of the appellee. Payne v. Fiscal Court of Carlisle County, 200 Ky. 41, 252 S. W. 127; Caldwell County v. First National Bank, 151 Ky. 720, 152 S. W. 757; County Board of Education v. Liter, 227 Ky. 493, 13 S. W. (2d) 516; Cooley's Constitutional Limitations (7 Ed.), page 113.

The fact the act is mandatory in this regard does not render it invalid on the ground that it is an infringment on the constitutional power of the fiscal court. The Legislature may constitutionally withhold or grant to the fiscal court all discretion, and confer upon it merely administrative or ministerial duties, and at the same time it may create and empower boards whose members are elected or appointed in the manner provided therein,

and delegate to such board duties in regard to taxation which are advisory or ministerial in their nature. This principle was stated in the City of Louisville v. Com., supra, and was quoted with approval in Hendrickson v. Taylor County Farm Bureau, 196 Ky. 75, 244 S. W. 82. It was applied in Prowse v. Board of Education, supra, and in many cases subsequent to it. The Legislature is not forbidden by any constitutional provision vesting in such board such duties, nor withholding from the fiscal court all discretion to fix the rate of taxation or the amount of taxes necessary or required for any public purpose. Such is not a more objectional infringement upon the power of the fiscal court than if it were simply required to levy some rate in its discretion. If the state can adopt an agency for carrying on some part of the government, it may delegate to the agency to do what is required of it. It may delegate discretionary power or it may likewise delegate the power shorn of the discretion, as the latter is less than the former. City of Louisville v. Com., supra; Hendrickson v. Taylor County Farm Bureau, supra.

Counsel are agreed that the delay of the fiscal court in making the levy beyond the statutory period does not avoid the taxes, and that the writ of mandamus is the proper remedy. City of Somerset v. Somerset Banking Co., 109 Ky. 549, 60 S. W. 5, 22 Ky. Law Rep. 1129; Levi v. City of Louisville, 97 Ky. 394, 30 S. W. 973, 16 Ky. Law Rep. 872, 28 L. R. A. 480; Commonwealth v. United States Fidelity & Guaranty Co., 121 Ky. 409, 89 S. W. 251, 28 Ky. Law Rep. 362; Commonwealth v. C. & O. R. R. Co., 141 Ky. 633, 133 S. W. 559.

The building of citizenship out of and with children in each of the counties and cities of the state of the class of those in appellee's home is not only a purpose of local concern, but is a matter of state-wide importance. It is an essential and important business of all governments. City of Louisville v. Com., 134 Ky. 488, 121 S. W. 411. The pre-eminent purpose and primary duties of the appellee are to rescue delinquent, incorrigible, dependent, neglected, helpless children of the county and city, and to care for and develop them mentally, physically, and morally, in order to afford to them an opportunity for an equal chance in life with the more fortunate. Such

16

work of the appellee is a matter of public concern, not only to Jefferson county and the city of Louisville, but to the entire state, although only children residing in Jefferson county and the city of Louisville are eligible to receive the benefits of the authorized taxation. The Legislature may constitutionally enact such legislation as in its discretion will insure the provisions therefor.

It is our conclusion that the act involved is not objectionable on any ground urged by the appellant.

Wherefore the judgment is affirmed.

Whole court sitting.